## HACKETT v. THE PEOPLE.

1. Where the jury, after deliberating for a considerable length of time, returned into court and inquired of the court if they could indorse on their verdict a recommendation for mercy, and, being instructed that they might do so, quickly agreed upon a verdict of murder, *held*, that since under the statute the court had no discretion whatever in pronouncing judgment, the instruction was misleading and fatal.
2. Under the facts of this case, *held* that the verdict was clearly not warranted by the evidence.

*Error to District Court of Clear Creek County.*

THE facts are stated in the opinion.

Messrs. POST and COULTER and J. W. MULLAHEY, for plaintiff in error.

Attorney-General T. H. THOMAS, for defendant in error.

HELM, J. Plaintiff in error was tried and convicted upon an indictment for murder. He is now, and has been for upwards of five and one-half years last past, in the penitentiary under a sentence of imprisonment for life. Several errors are assigned, but we deem it unnec-

essary to consider any, save two.   The jury after delib-
erating for a considerable length of time, and being
brought into court at their own request, propounded the
following question: "Can the jury indorse on the ver-
dict a recommendation for mercy?"   To which question
the court answered by a written instruction that they
could indorse such recommendation upon their verdict
should they desire so to do.   Thereupon they retired, and
soon after returned a verdict of guilty in manner and
form as charged in the indictment.   They also embraced
in such verdict the following: "We, the jury, recom-
mend the defendant to the mercy of the court."   Thus it
appears that some of the jurors were opposed to a con-
viction for the grade of crime finally found in their ver-
dict, and that they only consented thereto upon condition
that the recommendation for mercy be incorporated.
They must have been led to suppose, from the court's
answer to their question, that this might have weight in
mitigating the severity of the sentence to be pronounced.
Any other explanation of the proceedings would be ab-
surd; and it must be assumed that without such belief
the verdict, as returned, would not have been agreed
upon.   Yet, as the law then stood, the court was power-
less to heed their suggestion.   Upon a verdict in this
form, it was his duty to pronounce a sentence of impris-
onment for life.   The law fixed the penalty, and he could
not subtract a single day.   He must either set the verdict
aside and order a new trial, or enter the judgment fixed
by the statute.   The instruction mentioned was, there-
fore, clearly misleading, and its submission was under
the circumstances a fatal error.

But we reverse the judgment in this case willingly for
another reason.   Surprising as the fact may be, it is
nevertheless true, that the verdict was not warranted by
the evidence.   In the light of all the testimony contained
in the abstract before us, manslaughter is certainly the
highest grade of crime for which the accused ought to

have been convicted. He asserts that the shooting was purely accidental. One witness testifies that before death deceased declared to him that the shooting "was all an accident." A witness for the state says that deceased used the following language after receiving the fatal wound: "Do try to take Pat (meaning Hackett) away from me out of the cabin. Tell him I said it was an accident." But, discarding entirely the accident theory, the evidence, at most, sustains only the conclusion that the fatal shot was fired in a sudden heat of passion, during a drunken brawl between companions; deceased having first choked Hackett, thrown him on the bed, and otherwise maltreated him. It is deemed unnecessary to give a description of the affray at length.

The judgment is reversed and the cause remanded.

*Reversed.*