[No. 632.   October 12, 1895.]

TERRITORY OF NEW MEXICO, APPELLEE, v.
MAXIMIANO GRIEGO, APPELLANT.

CRIMINAL LAW—MURDER—PENALTY—ERRONEOUS JUDGMENT, POWER OF
SUPREME COURT TO CORRECT.—Where, upon indictment for murder
in the first degree, the jury returned a verdict of guilty, and the
court sentenced defendant to imprisonment in the penitentiary for a
term of years, when, under a statute in force at the time the crime
was committed, the penalty therefor was death,—Held: That, under
section 2479, Compiled Laws, 1884, relating to appeals in criminal
cases, the supreme court has no power to enter, or to order the trial
court to enter, a different judgment; but the defendant is not entitled
to a discharge for such error, where the indictment is valid, and noth-
ing has occurred thereunder amounting to an acquittal.

ID.—MURDER—INSTRUCTION—VERDICT—RECOMMENDATION TO MERCY—
CONSTRUCTION OF STATUTE.—A charge to the jury, on a trial upon
indictment for murder in the first degree, that, in case they found
defendant guilty, the court would consider a recommendation to
mercy in fixing his punishment, was an unauthorized interference
with the deliberations of the jury, and reversible error. The statute
(Acts 1891, p. 151), permitting the jury to recommend clemency, has
no application to cases where the punishment is single and specific,
and where no discretion is allowed as to the punishment to be
inflicted. Territory v. Romine, 2 N. M. 114.

APPEAL from a judgment of the Fifth Judicial
District Court, Socorro county, convicting defendant
of murder in the first degree, and sentencing him to
imprisonment in the penitentiary. Reversed and re-
manded; LAUGHLIN, J., dissenting.

The facts are stated in the opinion of the court.

A. A. FREEMAN for appellant.

JOHN P. VICTORY, solicitor general, and H. M.
DOUGHERTY, district attorney Socorro county, for the
Territory.

Urging a jury to return a verdict is proper.
Thomp. on Trials, sec. 2302, note 4 and citations.

The court may recall a jury and, on its own mo-
tion, give them additional instructions. Leonardo v.
Territory, 1 N. M. 297; Thomp. on Trials, secs. 2363,
2364, 2365, and citations; Commonwealth v. Snelling,
— Mass. 321, 333; State v. Pitts, 11 Iowa, 343.

The instruction of the court as to mercy was
proper. Laws 1891, p. 151, sec. 10. It would be
proper even if the law absolutely fixed the punishment.
State v. Pomeroy, 120 Mass. 600.

Or some favor might be extended by the court to
the prisoner, but it constitutes no part of the verdict.
State v. Fink, 1 Bay, 165; State v. Merrell, 38 S. C.
83; Whar. Crim. Pl. and Prac., sec. 457, and citations

in notes; Stevens v. State, 51 Ga. 338; State v. Stewart, 9 Nev. 13; 16 Id. 42.

And so far as punishment is concerned, may be entirely disregarded by the court. People v. Lee, 17 Cal. 76.

If the lower court erred in pronouncing sentence, this court will not reverse the trial and conviction, but will remand the case with instructions to pronounce sentence according to law. Beale v. Commonwealth, 25 Pa. 22; McCue v. Commonwealth, 78 Pa. St. 175; 21 Am. Rep. 8.

BANTZ, J.—The defendant, charged with the murder of one Griego in November, 1886, was tried on an indictment found at the May term, 1895, of Socorro county. The jury returned a verdict against him of murder in the first degree. Under the statute in force when the crime was committed the penalty for murder in the first degree was death. The court sentenced him to imprisonment in the penitentiary at hard labor for twenty-five years. It was contended for the defendant that the judgment was not warranted by the verdict, and that defendant was entitled, not merely to a reversal of the case, but to his discharge. By the prosecution it was contended that the error, if error at all, was one which was beneficial to defendant, and, even if judgment was one of imprisonment when it should have been death, this court can and should correct it so far as to order the court below to enter judgment for the death penalty. Neither contention can be sustained under our statute concerning appeals in criminal cases. Section 2479, Compiled Laws, 1884, provides: "When an appeal is taken by the party indicted, if the supreme court affirm the judgment of the district court, it shall direct the sentence pronounced to be executed, and the same shall be executed accordingly. If the judgment be reversed, the supreme court shall direct a

MURDER: penalty: erroneous judgment, power of supreme court to correct.

new trial, or that the defendant shall be absolutely discharged according to the circumstances.'' Under this statute, if the judgment was reversible, the prisoner must be given a new trial, or he must be discharged, this court has no right to enter, or to order the court below to enter, a different judgment, without a trial anew, but the prisoner will not be entitled to his discharge if there is a valid indictment, and nothing has happened amounting to an acquittal upon it. In re Friedrich, 51 Fed. Rep. 747.

It appears from the record in this case that after the jury had retired to consider their verdict, and had been out for forty hours, they returned into court, and reported that they were unable to agree. Thereupon the judge, while disclaiming any desire to influence their verdict, spoke of the importance of their agreeing if it was possible. He alluded to the importance of this particular case as affecting public interests, and of the expense it had caused. The following colloquy between the judge and jury then occurred: ''The Judge: Gentlemen, I know it is a great hardship for you to be locked up. I appreciate the situation you are in, but in the interest of the public I think it my duty to give you every possible chance to agree upon a verdict. Mr. Freeborn [one of the jurors], how do you feel this morning? Mr. Freeborn: Pretty bad, sir. Judge: Is there anything I could give you, or order for you,—any medicine or doctor? Mr. Freeborn: No, sir; I have some medicine. Judge: Is there any kind of food you would like to have? Mr. Freeborn: No, sir. Judge: While I dislike to keep you locked up, gentlemen, I think it my duty to give you one more chance. Mr. Stackpole [another juror]: It strikes me that everything has been done that can be done to find a verdict in this case, and the jury is only punished. It is almost impossible to find a verdict. Judge: Gentlemen, as I said awhile ago, I

think I will give you one more chance in this case, to see if you can agree. You can retire and make another trial.'' This occurred between 8 and 9 o'clock in the evening. The jury retired, and at 11 o'clock the following morning the jury returned into court, and the following occurred: ''Judge: Gentlemen, have you agreed upon your verdict? Jury: No, sir. Judge: Gentlemen of the jury, there is an instruction in the charge which I might have given you ordinarily, which I did not give you, but which the law authorizes me to give. It is this: While the law fixes the punishment in the case, or rather while the court assesses the punishment, the law authorizes you, in case you find the defendant guilty, to recommend him to the mercy of the court; and that recommendation made by the jury will be considered by the court in fixing the punishment. I thought it proper, gentlemen, to give you these instructions, and have brought you in for that purpose. This is all I have to say to you, and you can retire to your room.'' The jury retired, and in half an hour the jury returned the following verdict:

''We, the jury, find the accused, Maximiano Griego, guilty as charged in the indictment. Owing to the long lapse of time since this murder has been committed, the jury recommends the prisoner to the mercy of the court.    RICHARD STACKPOLE, Foreman.''

We think these recitals from the record render it quite apparent that the sudden agreement of the jury, after being out and unable to agree for fifty-four hours, was influenced quite powerfully by the judge's instructions that a recommendation of mercy would receive his consideration in fixing the punishment. It seems within the range of reasonable probability that with a knowledge that nothing but the death penalty would be the consequence of their verdict, no agreement could

*INSTRUCTION: verdict: recommendation to mercy: construction of statute.*

have been secured from the jury. The gravity of the
punishment may well have caused jurors to hang to a
doubt of guilt rather than hang a man whose guilt
they doubted. Coming, as it did, without request,
after the jury had been deliberating and unable to agree
for fifty-four hours, it was an indication, quite pointed,
of the judge's opinion. Randolph v. Lumpkin, 10 L.
R. A. (Ky.) 88. It was an intimation from the court
of a lighter sentence than the jurors had expected, and
must have been harmful to the defendant. People v.
Harris, 43 N. W. Rep. (Mich.) 1060. In McBean v.
State, 53 N. W. Rep. (Wis.) 497, the jury sent an
inquiry to the judge whether they could depend upon
his clemency if they brought in a verdict of guilty. The
judge answered, "Yes." On appeal the conviction
was reversed, and the supreme court say: "The prom-
ise thus secured was calculated to overcome reasonable
doubts, and coerce an agreement for conviction. It
was an unauthorized interference with the deliberations
of the jury. * * * Any promise, pledge, or declaration
of the trial court, calculated to draw the attention of
the jury away from the evidence, and induce them to
base their verdict upon ulterior considerations, is neces-
sarily misleading, and hence erroneous." A charge
like this to the jury upon some particular matter, and
under these circumstances, was a suggestion that the
court believed it to be of controlling importance in the
case. Swaggerty v. Caton, 1 Heisk. (Tenn.) 202.
Though a man who had committed a cold blooded
murder would perhaps have cause to congratulate him-
self that he had saved his neck at the expense of his
liberty, it will furnish no argument for finding the
easier method, by way of the penitentiary, for finding
the defendant guilty of murder in the first degree.
The statute which permits a jury to recommend clem-
ency (Acts 1891, p. 151) has no application to those
cases where the punishment is single and specific, and

where there is no discretion allowed as to the punishment to be inflicted. Territory v. Romine, 2 N. M. 114. Counsel for the prosecution do not controvert this, but say that the jury had the right to make it for the consideration of the governor to influence a pardon or commutation of sentence. The plain answer is that in this case the judge told the jury that he would consider it in fixing the punishment, not that the governor might afterward. The judge had no right to hold out any promises to the jury, much less one which he could not lawfully fulfill. The legislature has fixed the punishment of death; and, as was said by Lord Chief Justice HOLT in King & Queen v. Walcott, 4 Mod. 400: "When the law of England appoints a particular judgment for an offense, it is not in the power of the judge to alter it, either by addition or diminution." See, also, In re Friedrich, 51 Fed. Rep. 747, affirmed in 149 U. S. 70. The fact that the punishment inflicted in this case seems to be milder than that which the law imposed is of no consequence. Even in cases where the legislature has altered the penalty for an offense after it was committed, the general rule is that, except where the new law merely dispenses with all or a divisible portion of the punishment imposed by the old law, it is considered as ex post facto. Suth. St. Const., sec. 470. If this be true, then the change in the law can no more be made after the offense, by the sentence of the judge, than it could by the legislature. In Hartung v. People, 22 N. Y. 95, the legislature, after an offense was committed, altered the punishment of murder from death to imprisonment at hard labor in the penitentiary. Mr. Justice DENIO said: "It was highly probable that it was the intention of the legislature to extend favor, rather than increased severity, toward this convict and others in her situation; and it is quite likely that, had they been consulted, they would have preferred the application of this law to their cases,

rather than that which existed when they committed the offenses of which they were convicted. But the case can not be determined upon such considerations. * * * We have no means of saying whether one or the other would be the most severe in a given case. That would depend upon the disposition and temperament of the convict. The legislature can not thus experiment upon the criminal law. In Shepherd v. People, 25 N. Y. 414, it was said that, if the constitutional security against ex post facto laws depended upon whether the old or the new law be the "more merciful or lenient, you leave it to the discretion of the legislature and the courts to say whether the new punishment is or is not more merciful or lenient than the old; and such a construction of the constitutional prohibition would impair its value and certainty of protection." See, also, Lindzey v. State, 65 Miss. 542; Cooley, Const. Lim., 324; Kring v. Missouri, 107 U. S. 221.

The declaration of law made in this case, that upon a recommendation of clemency by the jury the judge would consider it in fixing punishment for murder in the first degree, was erroneous, and, being erroneous, if it can have had any influence on the jury, their verdict ought to be set aside. This was the rule laid down by MARSHALL, C. J., in Etting v. Bank, 11 Wheat. 75, and since then the supreme court of the United States has established a rule even broader. Thus in Deery v. Cray, 5 Wall. 807, Justice MILLER says that, while a cause will not be reversed for error which has worked no injury, "whenever the application of this rule is sought it must appear so clear as to be beyond a doubt that the error did not and could not have prejudiced the party's rights." See, also, Gilmer v. Higley, 110 U. S. 47; Boston & Albany Railway Co. v. O'Reilly, 158 U. S. 337. For the foregoing reasons this cause is reversed, and remanded for a new trial.

COLLIER, J., concurs.

LAUGHLIN, J. (dissenting).—I feel constrained to disagree with the majority of my brothers upon the bench, and believe it is a duty incumbent on me to express my views, and give my reasons for dissenting from the able opinion handed down on the important questions raised in this case.

The appellant, Maximiano Griego, was indicted, tried, and convicted of murder in the first degree, at

STATEMENT of the case.

the May, 1895, term of the district court for Socorro county, for the murder of one Juan, alias Alvino, Priesto, in the county of Socorro, on November 26, 1886. The remaining facts will appear in the opinion.

Appellant's counsel have assigned a great number of errors, but only those considered in the opinion of the court will be considered here. After the jury had been out nearly fifty-four hours deliberating on their verdict, the presiding judge called them in, and gave them the following additional instructions, to wit, "Judge: Gentlemen, have you agreed upon your verdict? Jury: No, sir. Judge: Gentlemen of the jury, there is an instruction in the charge which I might have given you ordinarily, which I did not give you, but which the law authorizes me to give. It is this: While the law fixes the punishment in this case, or rather while the court assesses the punishment, the law authorizes you, in case you find the defendant guilty, to recommend him to the mercy of the court; and that recommendation made by the jury will be considered by the court in fixing the punishment. I thought it proper, gentlemen, to give you these instructions, and have brought you in for that purpose. This is all I have to say to you, and you can retire to your room." The jury retired, and in about half an hour returned into court with the following verdict: "We

the jury, find the accused, Maximiano Griego, guilty as charged in the indictment.    Owing to the long lapse of time since this murder has been committed, the jury recommend the prisoner to the mercy of the court." Appellant contends, and with much force, too, that this instruction, together with the colloquy cited in the opinion of the court between the judge and the jury, influenced the jury to his prejudice, and that it is a fatal error, because such an instruction is not authorized by law in cases where the offense is murder in the first degree, and where the court charges only in that degree. The statute on that subject is section 10:    "In the trial of all criminal cases punishment within the limits prescribed by law shall be assessed by the court in its discretion; but juries may, in their discretion, upon return of a verdict of guilty in any criminal case, recommend defendant to the clemency of the court, and any such recommendation shall receive due consideration by the court."    Laws 1891, p. 151.    The court disclaimed to the jury in plain language any intention to in any manner influence the jury in their deliberations, and it is perfectly plain that he did not intend to so do, and it should not be presumed by this court that the trial court varied intentionally in any manner from his duties and responsibilities, upon the trial, unless it shall affirmatively appear from the record to the contrary.    If the statute, supra, means what it says, and if that meaning is to be favored with a plain common-sense construction, then it was the duty of the court to give the instruction in question.    It is the duty of the trial court to instruct on all the law applicable to the case, and if it was error at all it was in favor of appellant, and not such that he can be heard to complain of.    This statute specially provides that juries may, in their discretion, recommend the defendant to the clemency of the court, and that such recommendation shall receive due consideration by the court.

It could not, I believe, be contended that, if the court
had failed to give the alleged fatal construction, and
the jury of its own motion had returned a verdict with
the recommendation for clemency to the court, that it
would have been a void verdict, or that the court would
have been authorized in refusing to accept it with that
recommendation in it.    I think a court would be guilty
of error to refuse to receive such a verdict, and would
err not to give such "recommendation due considera-
tion."

But it is contended by appellant that the court
was powerless in the premises, and was compelled to
pass sentence of death by hanging by the neck until
dead, and that the court committed a fatal error in not
doing so; and this may be true, considering the whole
record together.    But the court is not powerless in
such matters when he has such a recommendation from
the jury.    He could, with that as a basis, recommend
the defendant to the governor, and secure executive
clemency, and a commutation to imprisonment, and it
is well known that on the petition of the jury like this,
and on the recommendation of the trial judge, execu-
tive clemency is seldom, if ever, refused.    And there
are many other ways in which a trial court can properly
aid the prisoner after conviction.    Moreover, to say
that the jury were influenced by the objectionable
instructions is to hold that they disregarded their
solemn oaths, and I can not see anything in that
instruction even tending to support that contention,
unless it is that the jury returned a verdict very soon
after the instructions were given; and this is a pre-
sumption not authorized by law.    The legislature had
an object and purpose in view, no doubt, when the
statute, supra, was enacted, for putting into it the pro-
vision authorizing the jury to recommend the prisoner
to the clemency of the court, because from 1846 to that
time (1891) it had been the province of the jury to

assess the punishment in all cases, and it is evident
that the legislature intended by the insertion of that
clause to reserve to the jury that right in all criminal
trials, and it is only humane and proper in its intent
and effect. These views are not unsupported by
respectable authority. The following excerpt is from
the case of State v. Murrell, 33 S. C. 99: "Because
his honor erred in bringing into court the jury and
making the following statement: 'By the Court:
Have you agreed on your verdict? The Foreman:
No, sir. The Court: Is it a question of law? The
Foreman: We think so. We wish to know if we can
supplement our verdict with a recommendation to
mercy. The Court: Yes, sir. The law provides that
in certain cases the jury are allowed to supplement the
verdict with a recommendation to mercy, and that of
itself changes the verdict. In cases like this, a recom-
mendation to mercy would have its influence with the
court. It would not be binding upon the court, but it
would have its influence upon the court. There is no
provision that the court shall be governed by the
recommendation, but, of course, the court is always,
more or less, owing to the circumstances, governed—
influenced, I should have said—by the recommendation
of the jury.'" The court in that case held that the
court below did not err in giving the jury the instruc-
tion above quoted, although the offense was a capital
one; and that case was decided in 1890. And in sup-
port of the opinion citations are made. State v. Frink,
1 Bay, 165; State v. Gill, 14 S. C. 415. It is true,
many decisions can be, and have been, in the opinion
of the court, cited against this contention.

The court passed sentence on the appellant here,
and assessed his punishment at twenty-five years' con-
finement in the New Mexico penitentiary. The statute
fixes the punishment on conviction for murder in the
first degree at death, and I fully concur in the opinion

of the court that the sentence to a term of imprisonment was erroneous; but I do not concur in the
opinion that that error is sufficient to reverse the case
for a trial de novo.   The statute provides (Comp.
Laws 1884, sec. 2479):   "When an appeal is taken by
the party indicted, if the supreme court affirms the
judgment of the district court, it shall direct the
sentence pronounced to be executed, and the same
shall be executed accordingly; if the judgment be
reversed, the supreme court shall direct a new trial, or
that the defendant be absolutely discharged, according
to the circumstances of the case."   Id., sec. 2480:
"When the appeal has been taken by the territory, if
the judgment of the district court be affirmed, the
party shall be discharged; if reversed, the supreme
court shall direct the district court to enter up judgment upon the verdict rendered; or, when no judgment
has been rendered, to proceed to trial on the indictment."   It is held in the opinion of the court that this
court can do only one of two things under section
2479, supra; that is, to affirm or reverse for a trial
anew.

Assuming that the trial was in all respects regular,
and that no reversible error intervened in the record,
I believe that this court had the power, as an appellate
tribunal, to remand the case, and order the court below to pass sentence on the prisoner in accordance with
the verdict returned by the jury.   It will be seen by
section 2480, supra, that this court is required when
the appeal is taken by the territory, and the judgment
of the lower court is reversed, "the supreme court
shall direct the district court to enter up judgment
upon the verdict rendered."   Suppose the district court
had, on the incoming of the verdict of the jury, sustained a motion in arrest, and that the territory had
prosecuted an appeal from that decision, and this court

had reversed it, would it, in such an event, be contended that a trial de novo should be had on the indictment? I think not. I think this court would direct the court below to enter up a judgment upon that verdict as rendered. If this position is correct, can any sound reason be given why a rule should be applied to the defendant when he is the appellant other than that applied to the territory when it is the appellant? Those two sections are parts of the same act, and a part of the Kearney Code, and have been in force since 1846, and I am unable to see why this court has not the same power to direct the lower court to enter up a judgment upon the verdict, when the party indicted appeals, that it has when the territory appeals. The party indicted should have the same right to a new trial in either case, if the trial and conviction was proper, fair, and impartial in both instances; and, so far as the opinion of the court in this case is considered, the trial was fair and impartial, except as to the instructions, and the form of the sentence therein passed upon, which I am now considering. In one case exception is taken after trial to the indictment; the court sustains it, and the territory appeals and succeeds, and this court directs the court below to enter up judgment upon the verdict as rendered, and the defendant is denied a new trial. In the other case, exception is taken to the sentence of the lower court, and it is overruled, and he appeals, and succeeds on that point in this court, and is allowed a new trial. After reading the two sections, supra, together, it will be seen that the distinction is reduced to a refinement, and such a refinement is not at this time a part of the common law. In re Friedrich, 51 Fed. Rep. 747, is cited in the opinion of the case as authority. That was an opinion by United States Circuit Judge Hanford in habeas corpus proceedings in a case somewhat like the one at bar. The defendant was tried and convicted of murder

in the first degree, in the state of Washington, and the
trial judge passed the death sentence on him in accord-
ance with the law, and on a review of the case by the
supreme court that court found that the facts did not
sustain the verdict in the first degree, and under sec-
tion 1429, Hill's Code of that state, which provides that
"the supreme court may affirm, reverse or modify any
judgment or order appealed from, and may direct the
proper judgment or order to be entered, or direct a
new trial or further proceedings to be had," instead of
reversing and remanding for a new trial, it ordered
that the verdict stand, and remanded the case to the
court below, and directed it to enter a judgment
against the prisoner, adjudging him guilty of murder
in the second degree, and to proceed thereon in accord-
ance with law; and from that the prisoner sued out a
writ of habeas corpus.  In commenting on the section
of the Code, supra, the learned circuit judge said:
"This law does not, in terms nor by implication, give
any power not usually possessed by appellate tribunals.
Power to modify a judgment or direct a proper judg-
ment is given; and power to order a new trial of a
cause, whereby the verdict of a jury may be annulled,
is given.  But to the word 'judgment' in this statute
must be given its true legal and accurate definition.  It
does not stand as a synonym for the word 'verdict;' "
and he then proceeds to quote from a very able opin-
ion of Mr. Justice GRAY in Com. v. Lockwood, 109
Mass. 323, in which he says:  "The ordinary legal
meaning of 'conviction,' when used to designate a par-
ticular stage of a criminal prosecution triable by a jury,
is the confession of the accused in open court, or the
verdict returned against him by the jury, which sus-
tains and publishes the fact of his guilt; while 'judg-
ment' or 'sentence' is the appropriate word to denote
the action of the court before which the trial is had,
declaring the consequences to the convict of the fact

thus ascertained." This is a clear and strong-drawn
distinction between the office of a verdict and the judg-
ment or sentence of the court, and this court has the
power, under section 2480, supra, to direct the court
below to enter a judgment upon a verdict rendered
when the territory is appellant. And Mr. Justice
HANFORD, in commenting on the Washington statute,
supra, expressly says that "this law does not, in terms
nor by implication, give any power not usually pos-
sessed by appellate tribunals." And if that statute in
express terms does not confer any additional power on
that court, under our statute (section 2479, supra) does
this court possess the power to direct the court below
to enter up a judgment upon the verdict rendered in
accordance with law? The error in the Washington
supreme court was in directing the court below to enter
a judgment not authorized by the verdict. This was
clearly an invasion by the court on the province of the
jury in an attempt to pass upon the facts and find a
verdict. This no court has any right to do, however
pure, just, or wise it may be. And in this respect the
case is very dissimilar from the case at bar, and from
the contention here urged.

It is contended in the opinion of the court that
the decision in the case of In re Friedrich, 13 Sup. Ct.
793, is conclusive in the case at bar. That is true in
so far as it applies. That is the same case, and on the
same point, passed on by Circuit Judge Hanford in 51
Fed. Rep. 747. Mr. Justice JACKSON, in speaking for the
supreme court, said: "At common law the general
rule undoubtedly was that where an erroneous judgment
was entered by a trial court, or an erroneous sentence
imposed, on a valid indictment, the appellate court, on
error, could not itself render such a judgment as the
trial court should have rendered, or remand the case
to the trial court with directions for it to do so, but
the only thing it could do was to reverse the judgment,

and discharge the defendant.   This rule was recognized
in England in the case of Rex v. Bourne, 7 Adol. & E.
58, when the court of king's bench reversed the judg-
ment of the court of quarter sessions, and discharged
the  defendants, because the sentence imposed upon
them by the court was of a lower grade than that which
the law provided for the crime of which they had been
convicted.   Some of the states in which the common
law prevails or is adhered to have adopted the same
rule, but in most of the states it is expressly provided
by statute that when there is an error in the sentence,
which calls for a reversal, the appellate court is to ren-
der such judgment as the court below should have
rendered, or to remand the record to the court below
with directions for it to render the proper judgment;
and this practice seems to prevail in the state of Wash-
ington." It will be seen here that the opinion of this
court does not follow either proposition laid down by
the supreme court of the United States in the case
cited.   It did not reverse and discharge the prisoner,
it did not render any judgment as to the court below,
nor did it remand the record to the court below with
directions for it to render the proper judgment on the
verdict, but it did reverse the case, and remand it for
a trial anew on the indictment.

In Benedict v. State, 12 Wis. 313, a defective or
erroneous judgment was entered in the court below,
because it was not in accordance with the statute, and
Chief Justice DIXON, after commenting on and revers-
ing the judgment because it did not contain the words
"hard labor and solitary confinement," said:   "We
are of opinion that the sentence or judgment which
the law declares shall be pronounced upon the plain-
tiff in error for the crime of which he stands regularly
convicted according to the laws of the state, has not
yet been pronounced; and, as it is doubtful whether
this court has the power to supply the deficiency, the

proper course appears to be for us to order the court below to proceed to give judgment on the conviction. In thus disposing of this case, we have adopted the practice of the court of king's bench in England, when, under like circumstances, a procedendo is awarded. See King v. Kenworthy, 1 Barn. & C. 711; (8 E. C. L. 196); Reg v. Holloway, 5 Eng. Law & Eq. 310." In that state a statute exisited in almost the same words as that of the state of Washington, supra, and the court held that: "The case must, therefore, be remitted to the court below, with directions that that court proceed to pronounce the judgment required by law." Beale v. Com., 25 Pa. 22, was a case on an erroneous sentence, and Chief Justice LEWIS, in delivering the opinion of the court, on that point said: "The doubts which formerly existed respecting the power of the supreme court upon reversing a judgment in a criminal case are entirely dissipated. We have authorities to show that the supreme court, on reversal of a judgment in a criminal case for error in the sentence, has power to pass such sentence as the court below ought to have passed. Drew v. Com., 1 Whart. 281; Daniels v. Com., 7 Barr. 375; Com. v. Ellis, 11 Mass. 465; Kane v. People, 8 Wend. 211. It has also the power to award a procedendo in a criminal case; Rex v. Kenworthy, 1 Barn. & C. 711. And it may, in its discretion, remit the record with orders to proceed on the indictment, after reversal of an erroneous judgment. Com. v. McKisson, 8 Serg. & R. 422; Com. v. Church, 1 Barr. 110. The act of the sixteenth of June, 1836, conferred no new power in this respect. It was designed to remove doubts which had arisen in consequence of conflicting decisions. The common law embodies in itself sufficient reason and common sense to reject the monstrous doctrine that a prisoner whose guilt is established by a regular verdict is to escape punishment altogether because the court com-

mitted an error in passing sentence. If this court sanctioned such a rule, it would fail to perform the chief duty for which it was established. Our duty is to correct errors, and to 'minister justice.' But such a course would perpetuate error, and produce the most intolerable injustice." In the case of Dodge v. People, 4 Neb. 220, where the sentence and judgment were erroneous because the prisoner was not present in court when it was pronounced, the contention was made that by reason of this error the supreme court of that state had no power to either pass sentence or to remand the case to the district court with instructions to pronounce sentence in conformity to law. And Mr. Justice MAXWELL, delivering the opinion of the court, said: "We are aware that cases can be found holding, under a statute similar to ours, that there is no authority in this court either to reinstate the prisoner or remand the case to the court below for that purpose. We may correct errors in any other respect, so that the accused has had a fair trial, and that his rights have been properly guarded and secured; but the moment it appears that the court has not fully complied with the law in pronouncing sentence, it is at once ousted of jurisdiction, and the accused must go acquit. This doctrine, originating in England at a time when the courts of that country held that they had no authority to review proceedings and judgment in cases of felony, and grant new trials, partakes of the reasoning of that period that the judgment in a criminal case was absolute, unless a pardon was granted; that, if the judgment did not conform to the law, there was no power of revision or amendment; and, as the prisoner could not be held on an invalid judgment, he must, therefore, be discharged.

This doctrine was expressly overruled in King v. Kenworthy, 1 Barn. & C. 711; Reg v. Holloway, 5 Eng. Law & Eq. 310; and the English courts now hold

that they have full authority in such cases to impose
the sentence required by law.   *   *   *   This case is
therefore remitted to the court below, with directions
to proceed to pronounce judgment on the verdict in the
manner prescribed by the statute." In the case of
Williams v. State, 18 Ohio St. 46, the error assigned
was an erroneous judgment and sentence, and the
court, in passing upon the error, said: "As the error
in this case is only in the insufficiency of the judgment
and sentence of the court, their reversal will not affect
the validity of the conviction. The case will be re-
manded to the court of common pleas of Defiance
county, whither the plaintiff in error will be sent, for
judgment and sentence upon the verdict of the jury
pursuant to law." The same doctrine was maintained
in Richett v. State, 22 Ohio St. 405. And in Peglow
v. State, 12 Wis. 534, where the error assigned was an
erroneous sentence because the words "at hard labor,"
were left out, Chief Justice DIXON, in passing on that
error, said: "The judgment which the law authorizes
and requires has not been pronounced, and the case
stands as if no attempt to do so had ever been made.
The circuit court is therefore directed to proceed to
give judgment in this case in accordance with the re-
quirements of the law. Let the record be remitted to
the court below with directions to that effect." In the
case of People v. Riley, 48 Cal. 549, Chief Justice WAL-
LACE said: "The defendant was indicted and found
guilty of the crime of house-breaking in the daytime,
which is an offense punishable by imprisonment in the
state prison for a term not exceeding five years. Upon
the coming in of the verdict the court adjudged the
defendant to suffer imprisonment in the state prison
for the term of ten years. The judgment is therefore
reversed and the cause remanded, with directions to
the court below to proceed to judgment on the ver-
dict." There are other state authorities affirming the

doctrine hereinbefore cited, but it is not necessary to cite them here.

I have assumed, for the purpose of this dissenting opinion, that there are no other assignable errors than the two hereinbefore stated, and upon which the opinion of the court is founded; and upon that assumption I contend:    First, that the court did not err in giving the supplementary instructions as to the jury recommending clemency; and, that not being an assignable error, that, second, this court should have remitted the record, with directions to the court below to pronounce sentence upon the verdict rendered according to law.

I am unable to see why the county of Socorro should be put to the expense and delay of another trial de novo, if there were no errors on the former trial on its merits, simply because the court passed an erroneous sentence.    He was ably defended; all his rights were fully presented and fairly passed upon by the trial court; and the jury found him guilty on the facts as charged in the indictment, and the county should not be called upon to bear the expense of another trial on the same facts unless prejudicial error intervened on the trial.    It only affords him another opportunity to escape the punishment of a crime of which a jury of his peers have found him guilty.    It is a bad precedent to establish in this territory that when a fair and impartial trial has been had on a valid indictment, and a verdict rendered on the facts by a jury, the accused should be awarded a second trial on the indictment, because an erroneous judgment and sentence was entered by a clerk or passed by the court.    It seems to me to be a waste of valuable time, a needless expense to the public, and a possible subversion of justice to require a trial anew of this cause.    The general rule is that history never repeats itself with reference to lawsuits, but the general underlying principles for the disposition of criminal cases always remain the same,

among which are that the indictment must be valid, and the jury a legal one; that all the rights of the accused must be guarded and protected by the court; that he must be confronted face to face by his accusers; that he must be present in court during all the proceedings of the trial and at the passing of the judgment, and must be asked why sentence should not be pronounced upon him; that he is entitled to the presumption of innocence of the crime charged, and that that halo of innocence surrounds and continues with him until the contrary is made to appear affirmatively to the jury by legal evidence to the exclusion of all reasonable doubt; and when he has been awarded these rights he has had a trial by due process of law, and he is not then entitled to another trial de. novo on the indictment.