The People of the State of New York, Respondent, *v.* Eugene Santini, Appellant.

First Department, June 24, 1927.

Crimes — manslaughter, second degree — decedent was attacked by several men and killed — instructions — error to charge that on question of punishment court would take into consideration all circumstances and to intimate leniency if defendant was convicted — court did not charge, as matter of law, that defendant was acting in concert with codefendants.

The defendant was jointly indicted with six other men charged with manslaughter in the first degree and was convicted of manslaughter in the second degree. It appears that the decedent was attacked by several men and beaten to death.

The issue of defendant's presence at the time of the killing was close on the evidence. It was error for the court to charge the jury, in referring to comments of counsel as to the punishment provided for the crime, that the court would, on the question of punishment, take into consideration all of the facts surrounding the crime, and that the court did not believe that a man who did not actually do the killing should receive as severe punishment as one who did. The effect of the charge in the light of the fact that the jury deliberated for several hours and finally brought in a verdict of guilty, with a recommendation for clemency, was to intimate to the jury that if they would convict the defendant the sentence of the court would not be severe.

The court did not charge, as a matter of law, that the defendant upon the evidence submitted by the People was acting in concert with his codefendants and was chargeable with responsibility for the act of the one who killed the decedent.

FINCH and MERRELL, JJ., dissent.

APPEAL by the defendant, Eugene Santini, from a judgment of the County Court of the county of Bronx, rendered on the 23d day of April, 1926, convicting him of the crime of manslaughter in the second degree, and also from an order denying defendant's motion for a new trial made upon the minutes.

*Louis Susman* of counsel [*Samuel Goldstein* with him on the brief; *Samuel Goldstein,* attorney], for the appellant.

*George B. De Luca* of counsel [*Herman J. Fliederblum* and *Albert H. Henderson* with him on the brief; *John E. McGeehan, District Attorney*], for the respondent.

O'MALLEY, J. The defendant was one of seven men jointly indicted for manslaughter in the first degree. The defendants were charged with having assaulted the deceased. The assault is alleged to have been made with a paving brick and to have resulted in injuries which caused death.

The People's evidence showed that while the deceased was proceeding along the street with his eight-year-old son, he was attacked by two men. He ran to effect escape, but was surrounded near a brick pile, which stood partly in the roadway and partly on the curb in front of a building in the course of construction. At this point six or seven men joined in the attack and the deceased was beaten to death with bricks, iron pipes and other missiles.

The defendant is charged with having run from the opposite side of the street and having joined in the attack. It is claimed that he picked up an iron pipe and struck the deceased several times across the back of the head and neck. Sixty to seventy-five people were on the scene in addition to those who partiicpated in the assault. The attack took place between the pile of bricks and the building. The size of this pile was variously estimated from three to five feet in height.

The son of the deceased witnessed the assault and was unable

to identify the defendant, and in his unsworn statement given on the stand said he did not see the defendant among the assaulters. The only eye-witness was one Downs. He was in a window of a tenement, one flight up, diagonally across the street and at a distance of from 125 to 130 feet. He claims to have viewed the assault from this point with one James, at whose house he was a visitor. The latter was not called to testify.

On a trial of one of the other defendants held about ten days before the defendant's trial, the witness Downs failed to mention the defendant as having been present, although he identified by name the six other defendants. Nor does it appear that on such former trial any use of an iron pipe by any of the participants was mentioned by the witness.

The defendant was a young man twenty-one years of age, of previous good character. His testimony and that of his father was to the effect that the defendant was in his father's store when the crime was committed, and that he took no part therein. One of his codefendants, previously convicted, testified that the defendant was not on the scene.

The issue thus presented was sharply drawn. It was, therefore, very essential that no prejudicial error be committed. We think such error was committed. In his charge the learned court, in referring to comments of counsel on the punishment provided for the crime charged, properly instructed the jury that they were not concerned with the question of punishment. He then proceeded: " You must pass upon the facts, but inasmuch as the matter of punishment has been frequently referred to, it is only fair to say to you gentlemen, that in considering the question of punishment, if the jury finds this defendant guilty, this Court is prepared to take into consideration all the circumstances. This Court does not believe that a man who did not actually throw that brick which killed the deceased, should be punished as severely as one who threw the brick, or nearly so severely. Whether or not he is to receive any punishment, or how little that punishment is to be, or how great it is to be, must be left to the discretion of the Court. That is for the Court to say. Do not imagine, gentlemen, that because counsel tells you that the punishment is 20 years for manslaughter in the first degree, or 15 years for manslaughter in the second degree, that if, from the facts you find this defendant is guilty, of either one of those charges, that the Court will impose any such punishment. It is not the Court's intention to do so. The Court uses discretion and tries to use judgment in pronouncing sentence, and the Court will in this case, as in all other cases, consider all the surrounding circumstances, and the Court will

consider just what part this defendant played in the commission of this crime."

The jury deliberated between five and six hours. Twice they communicated with the court, and on one occasion stated that there was " a decided disagreement " in their deliberations and asked for the reading of additional testimony. In their verdict of guilty they asked the court " to consider the jury's very earnest recommendation for clemency in this case."

What the court said with respect to the punishment that might or might not be inflicted upon the defendant may have been accepted by the jury as tantamount to an invitation to convict the defendant in consideration of the court's implied promise to exercise leniency. It was injecting into the case considerations entirely foreign to the issues and which might, and probably did, influence the jury in reaching their verdict. Similar comment of trial courts in criminal cases frequently has been held to constitute reversible error. (*People* v. *Chartoff*, 72 App. Div. 555; *Miller* v. *United States*, 37 App. D. C. 138; *Commonwealth* v. *Switzer*, 134 Penn. St. 383; *Ellerbe* v. *State*, 79 Miss. 10; *People* v. *Harris*, 77 Mich. 568; *McBean* v. *State*, 83 Wis. 206.)

In *People* v. *Chartoff* (*supra*) the defendants were charged with a misdemeanor. There, as here, the court charged that the jury were not concerned with the question of punishment. He then charged: " Now, this crime charged here is a misdemeanor, and it being a misdemeanor, is, of course, not of the character of those trials which you have heard here, which have involved charges of crime far different and far more severe in their punishment than the crime now charged."

In writing for reversal, Mr. Justice Jenks said: " By making such comparison with other trials which the jury or the jurors had heard in that court, did not the learned judge not only instruct (or, at least, permit) the jury in this case to take into consideration the very matter which he said a jury should never consider, namely, the punishment which might follow a conviction, but also permit the jury to infer from the fact that this crime was a misdemeanor, with but a comparatively slight punishment, that a different rule applied to the case at bar from that which obtained upon the trials of more heinous offenses which admitted of severer punishments? After stating that a jury should never ' interfere to determine what punishment should be inflicted by hesitating to convict ' (if they believed a defendant guilty) did not the learned judge, in effect, tell this jury that *a fortiori* in a case of crime which, in comparison with other crimes, was venial and entailed but slight punishment, they might the more readily arrive at a conviction?

Of course, but one and the same rule must obtain in the trial of every crime, namely, that the defendant must have trial and fair deliverance upon the evidence, and is entitled to an acquittal in case of a reasonable doubt as to whether his guilt is satisfactorily shown by the evidence adduced. The vice of this charge was that it might possibly permit the jury to conclude that there was some sliding scale graduated by the gravity of the crime and the severity of the punishment therefor; whereas the defendants were surrounded by the same safeguards as if they had stood at the bar indicted for murder in the first degree."

In *Miller* v. *United States* (*supra*) the court, after reviewing authorities, said: " The rule deducible from the foregoing cases may be thus stated: While it is permissible for the trial court to caution the jury not to be influenced by the probable consequences of their verdict, as all responsibility after verdict is with the court, it is error for the court to put before the jury any considerations outside the evidence that may influence them, and lead to a verdict not otherwise possible of attainment. The deliberations of the jury should revolve around the evidence before them, and should be uninfluenced by other considerations or suggestions. The moment other suggestions or considerations find lodgment in their minds, that moment they stray from the path which the law has marked out, and their verdict, in consequence, does not rest solely upon the evidence. It is a colored and false verdict. When we consider that the existence of a reasonable doubt entitles a defendant to an acquittal, and that a very slight circumstance may affect the verdict, the danger from putting before the jury anything that may improperly influence their deliberations becomes more apparent.

" It is an unpleasant duty for the citizen to be compelled to sit in judgment upon his fellow-citizen, and it is a still more unpleasant duty to be compelled to vote for his conviction. It is apparent, therefore, that if the jury receive the impression that the consequences of a conviction are not likely to be serious, such an impression, in a doubtful case, will be almost certain to affect the verdict; and where that impression is obtained from the court, the consequences are all the more serious, for the obvious reason that the jurors will assume that the court has some object in mind when it indulges in such an intimation."

The verdict here was reached only after long deliberation. The jury's earnest recommendation for clemency indicates that it was brought only as a result of compromise, and only, no doubt, because of the jury's expectation that the court would carry out its intention of dealing lightly with the defendant.

As there must be a new trial, we deem it advisable to call to

attention another alleged error. It is urged that the court charged as a matter of law that the defendant, upon the evidence submitted by the People, was acting in concert with his codefendants, and was chargeable with responsibility for the act of the one who held the brick and actually inflicted the fatal injuries. Whether the defendant was acting in concert was, of course, a question for the jury. While it is true that in one part of the charge the court used language capable of the interpretation sought to be placed upon it by appellant's counsel, we think that when the charge is considered as a whole, this issue was fairly left for the determination of the jury.

It follows that the judgment of conviction should be reversed and a new trial granted.

McAvoy and Proskauer, JJ., concur; Finch and Merrell, JJ., dissent.

Judgment reversed and a new trial granted. Settle order on notice.