## JAKE JAMES v. STATE.

No. A-10147.    June 23, 1943.
(139 P. 2d 202.)

Ben W. Carter, of Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Bill Steger, Co. Atty., of Durant, for defendant in error.

BAREFOOT, J.   Defendant, Jake James, was charged in the district court of Bryan county with the crime of burglary in the second degree, was tried, convicted, sentenced to serve a term of two years in the State Penitentiary, and has appealed.

From an examination of the record, it becomes necessary to discuss only one assignment of error.

Defendant was charged with burglarizing a building occupied by the tag agent of Bryan county, in Durant, on the night of May 17, 1940, by prying open a transom, entering therein and stealing a money box containing $18.70.

Just after defendant had committed this burglary, he was seen by a police officer, who gave chase and captured

the defendant on the streets of Durant. He was taken to the place where the officer had seen him throw the box away, and the box, with the money therein, was recovered.

It is unnecessary to give the details of the evidence. Defendant's defense was that of an alibi, several witnesses testifying that he was at his home, and therefore could not have been present at the time the burglary was committed. The evidence was amply sufficient to sustain the conviction of the defendant.

After the case had been submitted to the jury and they had deliberated on their verdict for quite a period of time, they returned into court and the following proceedings were had:

"Reporter's note: After the court gave oral instructions, and after argument of counsel, the Jury retired to the Jury room to consider its verdict, and after deliberating a while, returned to the court room to get certain information from the court, and was advised by the court, and ordered to the jury room in charge of the bailiff.

"By Mr. Carter (attorney for the defendant): Let the records show that the jury returned to the court room at 3:15 p. m. and told the Judge that they wanted to know if they could give the defendant a suspended sentence and the Judge instructed them, that it was not within their power to give the defendant a suspended sentence, but they could recommend a suspended sentence and he would not promise them anything, except that he would go into the case and decide whether or not the defendant was entitled to a suspended sentence, whereupon the attorney for the defendant requested the Judge to instruct the Jury that it was not within their power nor within his power to grant the defendant a suspended sentence and that it was necessary they should assess the punishment.

"By the Court: Let the record show this last request was made by the attorney for the defendant, after the Jury went back to the jury room and not in the presence of the jury and will be overruled.

"By Mr. Carter: Exception.

"Reporter's note: The jury returned to the court room at 4:28 p. m. in charge of the bailiff with their verdict. The clerk reads the verdict, and before the jury was discharged from the case, the court made the following remarks:

"By the Court: I didn't know at the time I talked to you a while ago and didn't know it until later, I can't suspend the sentence, because this boy has been convicted before. I don't want you to think I am violating my trust, but I can't do it where he has been convicted before. The statute says if a man has a previous good reputation. If he has a clean record, I can suspend the sentence, but where he has been convicted before, I have no discretion in the matter."

The verdict rendered by the jury was as follows (omitting the caption):

"We the jury duly empanelled and sworn in the above entitled case, do upon our oaths, find from the law and the evidence the above named defendant, guilty as charged in said information and assess his punishment at two years in State Penitentiary. We the jury recommed that the sentence be suspended."

It is contended by defendant that the refusal of the court to recall the jury before they had rendered their verdict, and instruct them that under the law he did not have the authority to suspend the sentence, was prejudicial to the substantial rights of the defendant, and constituted reversible error. He contends that the jury would not have rendered a verdict of guilty if they had been so instructed.

We have carefully examined the authorities cited by defendant to sustain this contention: People v. Sherwood, 271 N. Y. 427, 3 N.E. 2d 581; Hackett v. People, 8 Colo. 390, 8 P. 574; McBean v. State, 83 Wis. 206, 53 N.W. 497; Randolph v. Lampkin, 90 Ky. 551, 14 S.W. 538, 10 L.R.A. 88; Crawford v. State, 2 Yerg., Tenn., 60, 24 Am. Dec. 467; 23 C.J.S., Criminal Law, p. 870, § 1291; State v. Matthews, 191 N.C. 378, 131 S.E. 743; 16 C.J. 1026.

The state relies upon one case, that of State v. Ruzzo, 63 R.I. 138, 7 A. 2d 693.

We have also examined many other cases touching upon this question, and have come to the conclusion that not only the majority of the decisions sustain the contention of the defendant, but they are based upon the soundest principles.

Oklahoma Session Laws 1937, page 20, sec. 1, 22 O. S.A. 1941 § 991, provides:

"Whenever any person shall be convicted in any court of record for any crime other than murder, manslaughter or arson, the Judge trying said cause may, after sentence, suspend said judgment and sentence, and allow said person so convicted to be released upon his own recognizance. Provided, that no such person shall be so released, who has not, prior thereto, borne a good reputation, or who may have been, prior thereto, convicted of any crime in any state or territory of the United States."

The record and brief of plaintiff in error reveal that the defendant had previously been convicted four times; that he had been tried in the district court of Bryan county on a charge of burglary in the second degree before the same judge who was trying this case, convicted and sentenced to the penitentiary.

Under the statute above quoted, the court had absolutely no authority under the law to suspend any sentence given the defendant who, prior thereto, had been "convicted of any crime in any state or territory of the United States."

When this fact was called to the attention of the court by the attorney for the defendant, he should have recalled the jury and informed them of the statute. He could have done this at the request of the defendant, who would thereby have waived any right he had of informing the jury of his prior conviction. It can hardly be argued that the jury in the instant case came to the conclusion, after being told by the court that they could recommend in their verdict that the defendant be given a suspended sentence, that the court would not only give consideration thereto, but that in all probability the recommendation would be carried out. Yet under the law he had no right to consider the same or to suspend the sentence. It is true that the court said he would not promise them anything except that he would go into the case and decide whether or not the defendant was entitled to a suspended sentence. Yet the very fact that he told them they could make such recommendation, when as a matter of law he had no discretion in the matter, was, in our opinion, prejudicial to the rights of the defendant. A short time thereafter the jury returned into court and the court informed them that he could not suspend the sentence, "because this boy has been convicted before." However, he did not permit the jury to return to their jury room for further consideration after he had given them this information, but at that time accepted their verdict. The record does not disclose that the jury was even polled after this statement was made to them. Under circumstances such as this, it has been almost the unanimous opinion

of the courts that such error is so prejudicial to the rights
of a defendant that when it occurs, the case will be reversed
for a new trial.

In 16 C.J. 1026, § 2459, it is stated:

"It is error to instruct the jury that they can recom-
mend the prisoner to the mercy of the court, where the
law gives the judge no discretion in passing sentence upon
a convicted prisoner." See, also, 23 C.J.S., Criminal Law,
p. 870, § 1291.

In the case of Hackett v. People (Colorado), supra,
it is said:

"Plaintiff in error was tried and convicted upon in-
dictment for murder. He is now, and has been for upwards
of five and one-half years last past, in the penitentiary
under a sentence of imprisonment for life. Several errors
are assigned, but we deem it unnecessary to consider any,
save two. The jury, after deliberating for a considerable
length of time, and being brought into court at their own
request, propounded the following question: 'Can the
jury indorse on the verdict a recommendation for mercy?'
To which question the court answered by a written in-
struction that they could indorse such recommendation
upon their verdict should they desire so to do. Thereupon
they retired, and soon after returned a verdict of guilty
in manner and form as charged in the indictment. They
also embraced in such verdict the following: 'We, the
jury, recommend the defendant to the mercy of the court.'
Thus it appears that some of the jurors were opposed
to a conviction for the grade of crime finally found in
their verdict, and that they only consented thereto upon
condition that the recommendation for mercy be incor-
porated. They must have been led to suppose, from the
court's answer to their question, that this might have
weight in mitigating the severity of the sentence to be
pronounced. Any other explanation of the proceedings
would be absurd; and it must be assumed that without
such belief the verdict, as returned, would not have been

agreed upon. Yet, as the law then stood, the court was powerless to heed their suggestion. Upon a verdict in this form, it was his duty to pronounce a sentence of imprisonment for life. The law fixed the penalty, and he could not subtract a single day. He must either set the verdict aside and order a new trial, or enter the judgment fixed by the statute. The instruction mentioned was, therefore, clearly misleading, and, under the circumstances, a fatal error."

In the case of State v. Matthews (North Carolina), supra [191 N.C. 378, 131 S.E. 746], it is said:

"After several hours of deliberation upon the evidence, under the instructions of the court as to the law applicable to the facts as they might find them to be, the jury had not agreed upon a verdict. Within a short time after receiving the instruction that they could return a verdict with a recommendation of mercy they returned the verdict upon which the judgment was rendered. It is manifest that this verdict was rendered pursuant to the instruction of his honor. The recommendation of mercy was not voluntary on the part of the jury. * * *

"We must hold that it is error for the court to instruct the jury either in the general charge, or in response to an inquiry made by the jury, that they may return a verdict with recommendation of mercy, or with other words having reference, necessarily, to the judgment to be rendered by the court, and that, where under the law there is no discretion vested in the court, as to the kind or amount of punishment which may be imposed by the judgment upon the defendant, the error is prejudicial to the defendant. If the jury returns a verdict voluntarily, including the words with recommendation for mercy, or words of similar import, these words may be disregarded as surplusage, if it clearly and definitely appears that the jury, upon a consideration of all of the evidence, and under the instructions of the court, has agreed upon the verdict as returned by them."

In People v. Sherwood, 271 N.Y. 427, 3 N.E. 2d 581, 583, the court says:

"Now we come to another and even more serious error. After the jury had deliberated on its verdict for five hours, it came into court and the following incident occurred:

" 'The Court: Gentlemen, I understand you want an answer to the question, "Does the law permit a recommendation of mercy?"

" 'The foreman: That's right.

" 'The Court: Of course, the law does permit a recommendation of mercy; does that answer your question?

" 'The Foreman: Yes.'

"The jury retired. Six minutes later it returned. The record reads as follows:

" 'The Clerk: Gentlemen of the jury, have you agreed upon a verdict?

" 'The Foreman: We have.

" 'The Clerk: How do you find?

" 'The Foreman: Guilty of murder in the first degree and recommend mercy.

" 'The Clerk: You say you find the defendant guilty of murder in the first degree and you recommend mercy?'

"In the practical administration of justice in civil cases, courts necessarily assume that jurors live up to their oaths and that they are capable of and do perform extraordinary intellectual feats. Cf. Akely v. Kinnicutt, 238 N.Y. 466, 475, 144 N.E. 682; Crandall v. A. B. Leach & Co., Inc., 222 App. Div. 292, 225 N.Y.S. 649, 927. Justice, rough perhaps but approximate, is wrought by the assumption. When, however, the stake is the life of a person conceivably innocent, courts may make that assump-

tion only with a caution thrice guarded. We do not know how matters stood after five hours in the jury room. Where upon the evidence there may well have been doubt, we may assume that doubt, in some degree at least, existed. The jurors had been told by the district attorney in his summation that a grace of mercy by commutation rested with the Governor. That information, if it was to be given at all, should have been given by the court with appropriate explanation. It is difficult to conceive of any case, however, where it would be either necessary or proper to instruct a jury on that point. Coming as it did, it amounted to nothing less than an invitation to possible doubting minds and uneasy consciences, to solve their doubts against the defendant, and to salve their consciences with the thought that, if they were wrong executive grace might cure the error. When, after long hours, the jury came into court, it may be that there was a desire to be given assurance by the court of what the district attorney had said. Or it may be that assurance was desired of a common popular impression that a jury may recommend mercy and thereby perhaps minimize and soften the penalty which the judge would otherwise impose. The impression is a mistaken one. Under the law of this state the penalty for murder in the first degree is death. No power or discretion is vested in any judge or court to vary it. Whatever the motive of the jury's request may have been, the answer of the court removed all doubt and hesitation. The answer was wrong. The 'law' expresses neither permission nor denial. Probably the law would regard an uninvited or voluntary recommendation as surplusage. We need not say. Here the jury was in effect invited to go beyond its province, and was erroneously told that the law permitted it to do so. The error almost certainly was prejudicial to the defendant. That being so, we need spend little time in an examination of cases in other jurisdictions which have dealt with more or less similar situations. In general agreement with the conclusion here reached are State v. Kernan, 154 Iowa, 672, 135 N.W. 362, 40 L.R.A., N.S., 239; State v. Kiefer, 16 S.D. 180, 91 N.W.

1117, 1 Ann. Cas. 268; Hackett v. People, 8 Colo. 390, 8 P. 574. Cf. also People v. Santini, 221 App. Div. 139, 222 N.Y.S. 683, affirmed 246 N.Y. 612, 159 N.E. 672; contra, State v. Gill, 14 S.C. 410."

In the case of State v. Ruzzo (Rhode Island), supra [63 R.I. 138, 7 A.2d 694], the only case cited by the state, the defendant was convicted of operating an automobile upon a public highway so as to endanger life, resulting in the death of his companion. The court said: "The verdict of guilty, * * * is supported by the overwhelming weight of the evidence."

While the jury was considering the case, they came into the court and asked the trial judge if it was "permissible, * * * in case the defendant is found guilty, to recommend leniency." The court informed them that they could make such recommendation if they desired.

The defendant excepted to the instruction, but later waived it, and then requested the court to further instruct the jury that "the judge presiding at the trial can ignore recommendations of leniency if he sees fit." The court refused to so instruct the jury, and the defendant excepted.

The court said:

"There is no statute in this state which authorizes the jury to recommend a defendant to mercy. In the absence of statute, the overwhelming weight of authority holds that it is not a matter of right for the jury to accompany their verdict with a recommendation of mercy. If such a recommendation is made by them on their own motion, it is treated as mere surplusage and of no legal effect. State v. Doucet, 177 La. 63, 147 So. 500, 87 A.L.R. 1356; State v. Bradley, 6 La. Ann. 554. Although the recommendation does not invalidate the verdict, it is looked upon with disfavor in a number of jurisdictions. People v. Lee, 17 Cal. 76; People v. Caiazza, 61 Cal. App. 505,

215 P. 80; People v. Keylon, 122 Cal. App. 408, 10 P. 2d 86; State v. Hancock, 151 N.C. 699, 66 S.E. 137; State v. Matthews, 191 N.C. 378, 131 S.E. 743; State v. Bennett, 40 S.C. 308, 18 S.E. 886; Estes v. State, 35 Okla. Cr. 335, 250 P. 809; State v. Arata, 56 Wash. 185, 105 P. 227, 21 Ann. Cas. 242; Commonwealth v. Zec, 262 Pa. 251, 105 A. 279. It has been held that the court may refuse to receive a verdict with a recommendation to mercy— State v. Potter, 15 Kan. 302, 314; State v. McKay, 150 N.C. 813, 63 S.E. 1059—or it may direct the verdict to be entered without the recommendation. People v. Lee, supra.

"Difficulty arises when the jury, while considering the evidence and before reaching a verdict, ask the court whether they may recommend a defendant to mercy. In this state a jury discharge their full duty by fairly determining the guilt or the innocence of a defendant according to the evidence. The punishment that may follow a verdict of guilty is no concern of theirs. The grave responsibility of determining the nature and extent of the sentence rests solely with the court. Therefore, the jury are not entitled as of right to be advised in the matter of a recommendation to mercy.

"Whether a trial justice will answer a jury's inquiry respecting a recommendation to mercy rests entirely with him. He may properly decline to answer the question, since the jury should confine themselves strictly to a consideration of the evidence. They should not divert their attention from the only point for them to determine, which is the guilt or the innocence of the defendant, by injecting into their deliberations a consideration of what sentence the court may impose following a verdict of guilty. State v. Bell, 206 Iowa, 816, 221 N. W. 521; State v. Lunsford, 163 Wash. 199, 300 P. 529; State v. Vasquez, 16 Nev. 42; Russell v. State, 57 Ga. 420; State v. Overton, 85 N.J.L. 287, 88 A. 689.

"In the event that the trial justice chooses to answer the jury's question, he should first closely examine the form of question before answering, lest the question and answer,

when considered together, lead the jury to believe that, because of their recommendation to mercy, the punishment of the defendant will be reduced. McBean v. State, 83 Wis. 206, 53 N.W. 497. If the question is unobjectionable in form, then the answer of the trial justice should be expressed in language which will not permit the jury to believe that their recommendation to mercy will have any binding effect on the judgment of the court in the matter of sentence. State v. Kiefer, 16 S. D. 180, 91 N.W. 1117, 1 Ann. Cas. 268; State v. Kernan, 154 Iowa 672, 135 N.W. 362, 40 L.R.A., N.S., 239; State v. Doucet, supra; Territory v. Griego, 8 N.M. 133, 42 P. 81. Such a result, whether due to the form of the question or to the answer of the trial justice, constitutes an unauthorized interference by the court with the deliberations of the jury.

"The instant case is of the first impression in this state. Furthermore, no authority has been cited to us, nor have we found any, which deals with the precise question under consideration."

The court then reviews authorities cited, and says:

"Our examination of the authorities convinces us that no right of a defendant in a criminal case is violated if a trial justice refuses to answer the jury's inquiry regarding a recommendation to mercy, but that serious questions may arise if he elects to answer such inquiry. The motive that prompts a jury to ask whether they may recommend a defendant to mercy is rarely known and ordinarily rests in conjecture. Except for some unusual case where the surrounding circumstances clearly admit of sympathetic considerations from a humane viewpoint, an answer by the trial justice without explanation as to the legal effect of a recommendation to mercy, even though otherwise proper, may leave a doubt as to whether such answer exerted any influence on the jury or any member thereof in finding a verdict of guilty. After careful consideration, we are of the opinion that if, in response to a request from the jury, a trial justice sees fit to tell them that they may recommend a defendant to mercy, he should inform

them in plain language that such recommendation is without binding effect on the court in the matter of sentence. In view of this conclusion, we find that in the instant case the trial justice was in error in refusing to instruct the jury as requested by the defendant."

The court then decides that the defendant was not prejudiced under the special circumstances of this case, arguing, as does the state in the instant case, that the defendant was attempting to speculate that the jury might have been influenced in finding him guilty by reason of the remarks of the court. Yet, the court assumes that the jury had possibly agreed upon his guilt before they added to their verdict a recommendation of mercy.

The conclusion reached by the court does not appeal to us, especially in view of the conclusion of the court "that in the instant case the trial justice was in error in refusing to instruct the jury as requested by the defendant."

The record in this case reveals that when the jury returned to the court room, counsel for defendant orally requested that if defendant were found guilty, the jury assess the punishment. The court so instructed, and the jury assessed the punishment in its verdict at two years in the State Penitentiary. This was in conformity with the Oklahoma Statutes. Sec. 3107, O.S. 1931, 22 O.S.A. 1941 § 926, as construed by this court. See the following cases: Oelke v. State, 10 Okla. Cr. 49, 133 P. 1140; Craig v. State, 31 Okla. Cr. 19, 236 P. 909; Crouch v. State, 23 Okla. Cr. 325, 214 P. 747; Wakefield v. State, 65 Okla. Cr. 321, 89 P. 2d 330; Hutchman v. State, 61 Okla. Cr. 117, 66 P. 2d 99; Snider v. State, 71 Okla. Cr. 98, 108 P. 2d 552; Dunn v. State, 60 Okla. Cr. 201, 63 P. 2d 772.

For the reasons above stated, we are of the opinion that the judgment and sentence of the district court of Bryan county should be reversed and remanded. It is so ordered.

JONES, P. J., and DOYLE, J., concur.