SHENNERS, by guardian *ad litem*, Respondent, vs. THE WEST SIDE STREET RAILWAY COMPANY, Appellant.

*December 2 — December 16, 1890.*

*Street railways: Negligence: Injury to person: Special verdict: Inconsistent findings.*

> In an action against a street railway company for injuries to a child three years of age at a street crossing, the jury found specially that the injuries were the result of the negligence of the driver of the car which ran against the child, "taking into account the condition of the street, the extent to which it was used, the steepness of the grade, and all the facts and circumstances of the case bearing upon the question;" and that there was no contributory negligence on the part of those in charge of the child. *Held*, that these findings entitled the plaintiff to judgment, although the jury further found that when the driver first saw the child, "or could have seen him, in the exercise of proper care," the car was about ninety feet distant from the child; that the child suddenly started from the place where he was first seen by the driver, and ran towards the horses and the car; that he ran between the horses and the car before he could be prevented, and before the car could be stopped; that the driver did not have any reason to expect that the child would undertake to cross the street at the time; and that the defendant company was not guilty of any negligence, other than that of the driver, which caused the injury.

APPEAL from the Circuit Court for *Milwaukee* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

Clybourn street, in Milwaukee, runs east and west, and crosses Clermont street at right angles. The complaint alleges, in effect, that the plaintiff was a resident of Milwaukee, and three years of age; that the guardian was appointed October 3, 1888, as stated; that the defendant was a corporation created and existing under and by virtue of the laws of this state and the ordinances of said city, and engaged in operating and running street-cars, propelled by horses, for the purpose of carrying passengers for hire upon and

over said Clybourn and other streets of said city; that,
August 19, 1888, a certain car of the defendant, propelled
by horses, was by its servant being driven upon said Cly-
bourn street while said plaintiff was lawfully crossing on
the east side of said Clermont street, and the defendant by
its servant so negligently drove and conducted said street-
car that thereby the same ran and was driven against the
plaintiff, and seriously and permanently injured him, to his
damage in a sum named; that said Clybourn street and
other streets upon which the defendant was so operating
its street railway were public highways and thoroughfares,
over which great numbers of citizens of said city were con-
stantly passing and repassing; that in addition to the negli-
gence mentioned, and for more than six months immediately
prior to August 19, 1888, the defendant negligently and
unlawfully suffered and permitted that portion of said Cly-
bourn street, at the crossing at the intersection of the same
and Clermont street, to be and remain out of order and in-
sufficient, by suffering and permitting that portion of Cly-
bourn street, at said crossing, lying between the outside
rails of said tracks, to be and remain below the grade of
the surface of the balance of said street, and below the top
of said rails upon said track, the distance of six to eight
inches; that the defendant carelessly and negligently per-
mitted said car to get out of repair, so that the brakes and
other appliances thereon were and had become out of repair,
worn, broken, and unserviceable, so that they would not stop
the said car with reasonable certainty or dispatch or within
a proper and reasonable distance, yet that the defendant
carelessly and negligently used and operated the same as
aforesaid, and the defendant's servants so negligently drove
and conducted said unsafe, dangerous, and unserviceable
car that thereby the same ran and was driven against the
plaintiff and seriously injured him as aforesaid, whereby he
was permanently disabled, losing his right foot entirely, and

partly the use of his left foot, besides other great and serious bodily injuries, to his damage in the amount stated. The answer denied all negligence on the part of the defendant, and alleged contributory negligence.

At the close of the trial, and under the charge of the court, the jury returned a special verdict to the effect: (1) The plaintiff's injuries, of which he complains in this action, were the result of the negligence of the defendant's driver, who had charge of the car by which the injuries were caused, taking into account the condition of the street, the extent to which it was used, the steepness of the grade, and all the facts and circumstances of the case bearing upon the question. (2) The parents of the plaintiff were not guilty of negligence in leaving him with their daughter Jane. (3) The said daughter Jane was not guilty of negligence in suffering the plaintiff to go abroad with her younger sister. (4) Said younger sister was not guilty of negligence in leaving the plaintiff with his cousin, as she did. (5) Should the court be of the opinion that the plaintiff is entitled to judgment, we assess his damages at $8,000. (6) The driver of the defendant's car was not driving the horses at an ordinary, usual, and moderate rate of speed, before and at the time of the accident. (7) At the time the driver first saw the child, or could have seen him, in the exercise of proper care, the car was about ninety feet west of the plaintiff, at the east crossing. (8) The child suddenly started from the place where he was first seen by the driver, and ran towards the horses and the car. (9) The child ran between the horses and the defendant's car before he could be prevented, and before the car could be stopped. (10) The driver of the street-car did not have any reason to expect that the child would undertake to cross the street at the time. (11) The defendant company was not guilty of any other want of ordinary care which caused the injury, except the negligence of the driver.

Thereupon the plaintiff moved for judgment in his favor and against the defendant upon the special verdict rendered by the jury; and the defendant moved for judgment in its favor upon the record, pleadings, and the special verdict rendered by the jury. The court overruled and denied the defendant's motion, and ordered that the plaintiff have judgment against the defendant upon said special verdict, upon condition that within five days from date thereof the plaintiff should remit, from the damages assessed and found by the jury, the sum of $3,000, and in case the plaintiff failed so to do then that said verdict be set aside and a new trial granted, but that if the plaintiff filed such remittance then he was to have judgment against the defendant for the sum of $5,000 damages. The plaintiff's attorneys thereupon did remit from said verdict said sum of $3,000, and consented to take judgment for the sum of $5,000, and thereupon the court ordered judgment to be entered against the defendant and in favor of the plaintiff for that amount, with costs taxed at $246.83. From the judgment entered thereon accordingly the defendant appeals.

For the appellant there was a brief by *Danforth Becker*, attorney, and *Burton Hanson*, of counsel, and oral argument by *Mr. Hanson*.

1. The special findings show that the injury to the plaintiff was not the result of any negligence found by the verdict, but on the contrary was the result of a sudden and unexpected movement of the child, which could not have been prevented or avoided by the driver, and which he had no reason to expect. The plaintiff, therefore, cannot recover. *Hart v. Allen*, 2 Watts, 116; *Sharp v. Powell*, L. R. 7 C. P. 253; *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 161; *Kellogg v. C. & N. W. R. Co.* 26 id. 223, 281; *Stewart v. Ripon*, 38 id. 584, 591; *Kreuziger v. C. & N. W. R. Co.* 73 id. 158; *Milwaukee & St. P. R. Co. v. Kellogg*, 94 U. S. 469, 475; *Scheffer v. Railroad Co.* 105 id. 249, 252; *Handelun v.*

*B., C. R. & N. R. Co.* 72 Iowa, 709; *McDonald v. Snelling,* 14 Allen, 290, 296; *Lane v. Atlantic Works,* 111 Mass. 136, 141. The general finding of negligence will be held to be a mere conclusion of law, and will not control the judgment where the special facts show that such conclusion is erroneous. *Lemke v. C., M. & St. P. R. Co.* 39 Wis. 449; *Haas v. C. & N. W. R. Co.* 41 id. 44; *Kearney v. C., M. & St. P. R. Co.* 47 id. 144; *Ryan v. Springfield F. & M. Ins. Co.* 46 id. 671; *Hogan v. C., M. & St. P. R. Co.* 59 id. 139; *Martin v. Bishop,* id. 417.

2. The special verdict shows that the injury was the result of inevitable accident, and not of any negligence on the part of the driver. See *Cordes v. Third Ave. R. Co.* 4 N. Y: Supp. 439; *Henderson v. Knickerbocker Ice Co.* 5 id. 909; *Hestonville P. R. Co. v. Connell,* 88 Pa. St. 520; *Wolf v. H., W. S. & P. F. R. Co.* 2 N. Y. Supp. 787.

For the respondent there was a brief by *Rose & Bell,* and oral argument by *D. S. Rose.*

CASSODAY, J. The only error assigned is the granting of the plaintiff's motion for judgment upon the special verdict, and in denying that of the defendant. The effect of the pleadings, and the substance of the several findings in the special verdict, with their respective numbers, are given in the foregoing statement. The second, third, and fourth findings negative the alleged contributory negligence of the plaintiff, and are not questioned. The fifth finding assessed the plaintiff's damages, and, as subsequently reduced, is not questioned. The other findings all relate to the alleged negligence of the defendant. The real question is whether it appears from those findings, when taken together, that the injury was caused by the defendant's negligence.

We fully agree with the learned counsel for the defendant in saying that "the question arising on this appeal is

whether the special verdict entitles the plaintiff to a judg-
ment.   If not, then the defendant should have judgment.
In determining this question, the same presumption will
follow each special finding which would attach to a general
verdict; that is, the fact found therein is presumed to have
been supported by a preponderance of evidence, and to
have been established to the satisfaction of the jury.   Each
finding of the special verdict will control as to the particu-
lar fact found therein, as against any other finding upon
other issues, the same as it would control in case of incon-
sistency with a general verdict."   A verdict is a declaration
of the truth as to the matters of fact submitted to the jury.
This is true of a special verdict as well as a general verdict.
However many separate questions a special verdict may
determine, it is nevertheless returned as a whole, and, as
such, is a unit.   *Ryan v. Rockford Ins. Co.* 77 Wis. 611;
*Treat v. Hiles,* 75 Wis. 265.   Of course, two separate find-
ings in conflict with each other, substantially upon the same
specific fact, would nullify each other; so the finding of a
specific fact inconsistent with a more general finding upon
the same subject, will, to the extent of such specific fact,
cut down and limit such more general finding,   In other
words, some findings may be very broad and comprehensive,
while others may be very narrow and specific, and hence of
minor importance.

In the case at bar the first finding is very broad and
comprehensive, and covers every phase of the driver's neg-
ligence, taking into account the condition of the street, the
extent to which it was used, the steepness of the grade, and
all the facts and circumstances of the case bearing upon
the question.   In the language of counsel, above quoted,
the fact therein found " is presumed to have been supported
by a preponderance of evidence, and to have been estab-
lished to the satisfaction of the jury."   Among the facts
thus presumed to have been established by the evidence,

were the condition of Clybourn and Clermont streets being out of grade with the railway track at the crossing in question; the extent to which those streets, as public highways and thoroughfares, were used by citizens passing and repassing; the steepness of the grade, and whether the condition of the car prevented its being stopped with reasonable certainty or dispatch or within a proper and reasonable distance, as alleged and indicated in the foregoing statement. As indicated, the real question is how much is to be eliminated from that general finding by other specific findings bearing upon the question of the defendant's negligence; and whether, after such eliminations, there is still enough left to support the judgment.

The sixth finding is a negative. It is simply to the effect that the car was not being driven at an ordinary, usual, and moderate rate of speed before and at the time of the accident. That would be equally true if it were then being driven up a steep grade excessively slow, or, as the inferences seem to be, down a steep grade excessively fast. That finding, therefore, in no way militates against the first finding, but inferentially supports it.

The seventh finding is to the effect that at the time the driver first saw the child, "or could have seen him, in the exercise of proper care," the car was about ninety feet west of the plaintiff at the east crossing. This does not determine whether the driver in fact saw the child, but simply that when the car was ninety feet west of the plaintiff at the east crossing, he did see him, or could, if he had been in the exercise of ordinary care. Nor does it determine the location of the child at the time, except that he was at the east crossing. That finding would be equally true if the child was, at the time, at the outside edge of Clybourn street, or within two or three feet of the railway track, or at some point between. Nor does it determine whether the child was, at the time, standing or walking, nor, if walk-

ing, which way he was walking. All of those things must have been made plain to the jury by the evidence; and we may fairly assume that they were fully considered by them in answer to the first question submitted. The sole purpose of the seventh question was to have the jury determine the distance the car was from the child, when he came within the driver's range of vision, had he been in the exercise of ordinary care in keeping a lookout. Having determined that the child was within such range of vision when the car was ninety feet from him, it may fairly be presumed that he continued within such range of vision during the whole of the time the car was passing over that distance; so that for the whole of that distance the driver could have seen the child had he kept a vigilant lookout.

The eighth finding is to the effect that the child suddenly started from the place where he was first seen by the driver, and ran toward the horses and the car. As indicated, the jury nowhere found that the driver actually saw the child when the car was ninety feet from him, but simply that at that time he either did see him or could have seen him. If he did see him at that time, and at or near the edge of Clybourn street, and then or soon after saw him suddenly start and run toward the track, then the jury were justified in finding that the driver was negligent in not stopping before the child reached the track. If, on the contrary, the driver did not see the child at all until the horses were within a few feet of him, then the jury were justified in finding that the driver was negligent in not seeing the child when he could have seen him by keeping a lookout. *Heddles v. C. & N. W. R. Co.* 74 Wis. 239. Had the jury found that the driver actually saw the child standing in charge of some one within a few feet of the track at the east crossing, when the car was ninety feet distant, and that the child and the person in charge continued to stand there until the horses had nearly passed him, and

then suddenly ran in behind the horses, there would have been great force in the argument that there was an absence of negligence on the part of the defendant, or the presence of contributory negligence on the part of the person so in charge. But there is no such finding.

It is true the ninth finding is to the effect that the child ran between the horses and the car before he could be prevented, and before the car could be stopped. But, as indicated, the driver may have negligently failed to see the child until he got within a few feet of the track and the car, and when it was too late to prevent his going further, or to stop the car before it struck him.

True, the tenth finding is to the effect that the driver did not have any reason to expect that the child *would undertake* to cross the street at the time. That would be equally true if the driver negligently failed to see the child until he got within a few feet of the track and the car, or if he saw him at the edge of Clybourn street when the car was ninety feet distant, and then carelessly or negligently failed to observe him further or keep any lookout for him until he got within a few feet of the track and the car, and when it was too late to prevent his going further, or to stop the car before it struck him.

True, the eleventh finding is to the effect that the defendant was not guilty of any other want of ordinary care which caused the injury, except the negligence of the driver. But the ordinary care required of the driver must, after all, be determined by the circumstances which accompanied the transaction. His vigilance was required to be commensurate with his reasons for apprehending danger. Hence the jury were bound to take into account the condition of the track, the number of citizens who were constantly or ordinarily passing and repassing on these public streets, the steepness of the grade, the facility or want of facility for suddenly stopping the car, the character and disposition of

the horses, and in fact all the circumstances, in order to intelligently determine what kind of speed would be careless or reckless driving, or what want of care in keeping a lookout, or want of vigilance in stopping the car in the presence of reasonably apprehended danger, would be negligence.

The car moved and the child moved, and the circumstances necessarily kept shifting and changing as they approached each other, and hence the case was peculiarly for the jury. The special findings must necessarily be considered and construed with reference to such shifting and changing circumstances. So considered and construed, we must hold that the negligence found in the first finding is not wholly eliminated by any or all the other special findings. This ruling is not, as we understand, in conflict with any of the adjudications of this court. While we may differ with the learned counsel for the defendant as to the significance of some of those cases, yet our principal difference here is as to the construction and effect of the special findings in the case at bar.

*By the Court.*— The judgment of the circuit court is affirmed.