THE STATE OF IOWA v. JOHN KERNAN, Appellant.

**Criminal law:** INDICTMENT: SUFFICIENCY. An indictment charging
1 defendant with lewd and lascivious acts substantially in the lan-
guage of the statute is sufficient.

**Same:** RECOMMENDATIONS OF CLEMENCY: EFFECT UPON VERDICT. Jurors
2 have no concern with the punishment to be inflicted and ought
to be plainly told that they should not take that question into
consideration in making up their verdict; and where a verdict
was returned under assurance of the court that any recommenda-

tion of clemency would be given consideration, it should be set aside.

*Appeal from Cass District Court.*—HON. W. R. GREEN, Judge.

TUESDAY, APRIL 2, 1912.

THE defendant was accused of having committed lewd and lascivious acts with a child under 13 years of age, and appeals.—*Reversed.*

*Willard & Willard,* for appellant.

*George Cosson,* Attorney-General and *John Fletcher,* Assistant Attorney-General, for the State.

LADD, J.—The accused was indicted under section 4938-a, Code Supplement (chapter 173, Acts 32d G. A.) denouncing as a crime the willful commission of "any lewd,

1. CRIMINAL LAW: indictment: sufficiency.

immoral, or lascivious act upon or with the body, or any part thereof, of a child of the age of thirteen years or under, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, or of such child." The indictment was substantially in the language of this statute and, as it so individuated the offense that the accused had proper notice of the crime charged, the indictment was good. *State v. Porter,* 105 Iowa, 677; *State v. Johnson,* 114 Iowa, 430; *State v. Leasman,* 137 Iowa, 191; *State v. McGruder,* 125 Iowa, 741; *State v. Beebe,* 115 Iowa, 128.

In *People v. Grinell,* 9 Cal. App. 681 (98 Pac. 681), the defect in the indictment was the omission to negative an exception, not included in the statute of this state, consti-

tuting a part of the description of the offense, and, for this reason, the descision is not in point.

II.   The cause had been submitted to the jury and, after being out all night, that body came into court, and, in the absence of defendant, stated that they had failed to agree and wanted to know if they could make a recommendation to the court. Thereupon the court informed them that "while it is not usual, and some of the judges objected to a recommendation, it didn't, and they might do so, and he would consider such recommendation."   The jury then retired and on the same day returned a verdict of guilty, and recommended "the clemency of the court and that the sentence be made as light as possible."   Though doubtless not so intended, what occurred was well calculated to influence the verdict of the jury.   Indeed, that the court's response would be so used was to be inferred from the inquiry.   As contended, no promise was made save that the "recommendation would be considered," but, from what was said, the jury might well have understood that it would be favorably considered, and at least that it would be weighed in pronouncing judgment.   It amounted to holding out an inducement to the jury to agree upon a verdict, although under the indeterminate sentence law such recommendation might not have been given the slightest consideration, for, in any event, the maximum penalty must have been imposed.

2. SAME: recommendations of clemency: effect upon verdict.

In *McBean v. State,* 83 Wis. 206 (53 N. W. 497), it appears that the jury had sent this inquiry to the court: "If we bring in a verdict of guilty, can we depend on the clemency of the court?"   And the court responded in substance that they could.   This was held to be error, the court saying:

The question put by the jury to the trial judge in the case at bar was, in and of itself, harmless.   The error consists of the promise made by the trial judge to the jury, to

the effect that, if they found McBean guilty, they might rely upon him to extend the clemency of the court to the prisoner. It sufficiently appears from the verdict returned that the jury did rely upon such promise. The promise thus secured was well calculated to overcome reasonable doubts and coerce an agreement for conviction. It was an unauthorized interference with the deliberations of the jury. *Ryan v. Insurance Co.,* 77 Wis. 611 (46 N. W. 885). 'A verdict is a declaration of the truth as to the matters of fact submitted to the jury.' *Shenners v. Street Railway Co.,* 78 Wis. 387 (47 N. W. 622). To be such truth, however, it must be based wholly upon the evidence in the case. A verdict in disregard of such evidence, in whole or in part, is a false verdict. It follows that any promise, pledge, or declaration of the trial judge, calculated to draw the attention of the jury away from the evidence, and to induce them to base their verdict upon ulterior considerations, is necessarily, misleading, and hence erroneous.

In *Territory v. Griego,* 8 N. M. 133 (42 Pac. 81), jurors had been out a long time and, on returning into court, reported their inability to agree, and, after some talk with them, the court said there was an instruction he might have given which the law authorized: "While the law fixes the punishment in the case or rather while the court assesses the punishment, the law authorizes you, in case you find defendant guilty, to commend him to the mercy of the court; and that recommendation made by the jury will be considered by the court in fixing the punishment." In half an hour the jury returned with a verdict of guilty and a recommendation to the mercy of the court. In holding this instruction erroneous, the court remarked that the sudden agreement of the jurors, after being out fifty-four hours, indicated that they must have been "influenced quite powerfully by the judge's instruction that a recommendation of mercy would receive his consideration in fixing the punishment. It seems within the range of reasonable probability that with a knowledge that nothing but the death penalty would be the consequence of their

verdict, no agreement could have been secured from the jury. The gravity of the punishment may well have caused jurors to hang to a doubt of guilty rather than hang a man whose guilt they doubted. Coming, as it did, without request, after the jury had been deliberating and unable to agree for fifty-four hours, it was an indication, quite pointed, of the judge's opinion. Randolph v. Lamkin, 90 Ky. 551, (14 S. W. 538, 10 L. R. A. 87). It was an intimation from the court of a lighter sentence than the jurors had expected and must have been harmful to the defendant."

In *State v. Keifer*, 16 S. D. 180 (91 N. W. 1117, 1 Ann. Cas. 268), to an inquiry by the jury whether they could recommend the accused to the mercy of the court, the latter answered that it had made it an invariable rule to follow such recommendations, and this answer was held to be calculated to influence the jury. Other decisions are readily distinguishable because of differences in the facts.

In *Lovett v. State*, 30 Fla. 142 (11 South. 550, 17 L. R. A. 705), the statutory effect of a recommendation to mercy by the majority of the jury reduced the penalty from death to life imprisonment, and an instruction with reference thereto was approved. In *State v. Gill*, 14 S. C. 410, the court merely replied affirmatively to an inquiry of the jury whether they might recommend the prisoner to mercy if found guilty and, since no intimation of the consequence of such a recommendation was given, the court held there to have been no prejudice. In *Crawford v. State*, 2 Yerg. (Tenn.) 60 (24 Am. Dec. 467), a recommendation of mercy to the Governor was returned with the verdict. One of the jurors made affidavit that he woud not have agreed to the verdict but for his belief that it would be effectual; and another swore that it led him to agree. Such affidavits were held admissable, and a new trial ordered because of the misapprehension of these jurors. But in *State v. Bennett*, 40 S. C. 308 (18 S. E. 886), and *Penn v. State*, 62

Missi. 450, such similar showing was held not to invalidate a verdict.

The jurors should not have concerned themselves with the punishment, and ought to have been plainly told that they ought not to take that into consideration. Their function ended in deducing the truth from the evidence adduced and expressing it in their verdict. Anything said by the court calculated to draw their attention from the performance thereof, and to induce them to rest their conclusion upon ulterior considerations necessarily was misleading and prejudicial. We are of opinion that the promise of the court to give the recomendation consideration might well have led the jury to believe. and doubtless did, that the sentence to follow would be somewhat modified because thereof, and that this was extremely prejudical to the defendant.

Because of this error, the judgment is reversed, and the cause remanded.—*Reversed.*