STATE OF IOWA, Appellee, v. ARTHUR COOPER, Appellant.

**HOMICIDE:** Indictment and Information—First Degree. Indictment
1  reviewed, and held to sufficiently charge the infliction of injuries

upon the body of the deceased with the specific intent to kill and murder.

HOMICIDE: Murder—Premeditation. Record reviewed, and held to
2 support a finding of premeditation on the part of the accused in the killing of deceased.

EVIDENCE: Res Gestae—Hearsay Matter. Statements of a deceased
3 made some hours prior to the killing, to the effect that the accused "was drunk," reviewed, and held to be hearsay only, and properly rejected.

CRIMINAL LAW: Capacity to Commit Crime—Presumption as to
4 Sanity. Principle reaffirmed that, on a charge of homicide, the State presumes sanity on the part of the accused.

CRIMINAL LAW: Trial—Instructions—"Jury Recommendations."
5 The court, on the trial of a criminal cause, may instruct the jury (in response to its inquiry) that it may, in addition to its general verdict, make "recommendations" to the court, when the court is very careful not to lead the jury to infer that such "recommendations" will be given any consideration by the court.

CRIMINAL LAW: New Trial—Misconduct in Argument. The court
6 will not *presume* that the argument of the county attorney was aside the legitimate record.

CRIMINAL LAW: Responsibility for Crime—Insanity. Record re-
7 viewed, and held to justify a finding of sanity on the part of one accused of a homicide, notwithstanding strong testimony to the contrary.

*Appeal from Mahaska District Court.*—H. F. WAGNER, Judge.

FEBRUARY 13, 1923.

DEFENDANT was indicted, tried, and convicted of murder in the first degree, and sentenced to imprisonment for life in the penitentiary, from which sentence this appeal is prosecuted.— *Affirmed.*

*J. G. Patterson* and *S. V. Reynolds,* for appellant.

*Ben J. Gibson,* Attorney-general, *Maxwell A. O'Brien,* County Attorney, and *H. B. McCoy,* Assistant County Attorney, for appellee.

ARTHUR, J.—I. The indictment charged that, on or about the 25th day of August, 1921, the defendant willfully, feloniously, deliberately, premeditatedly, and with malice aforethought, and with intent to kill and murder the said Jennie Cooper, did feloniously strike, jump upon, stamp, kick, and kneel on the said Jennie Cooper, and upon her breast and chest, sides, head, neck, and shoulders, and did thus feloniously, willfully, deliberately, premeditatedly, and with malice aforethought, strike the said Jennie Cooper with his fists, and stamp, jump upon, kneel upon, and kick the said Jennie Cooper with his feet and knees and fists, and did then and there, in the manner aforesaid, inflict mortal wounds upon the said Jennie Cooper, and that she died therefrom.

Defendant was a mulatto, 39 years old. Jennie Cooper was his mother. She was a white woman, about 68 years of age, very badly crippled, and was obliged to use crutches. Defendant resided with his mother in Oskaloosa, Iowa, on North G Street, in the home formerly occupied by his father and mother. Defendant's father had been dead about 14 years. Defendant followed janitor work and house-cleaning.

The State claimed, and introduced evidence tending to show, that, on the 25th day of August, 1921, the defendant came home about noon, and within the next hour or hour and a half, started quarreling with his mother; that his mother was seen to go to the rear of the lot to a toilet located thereon; that, when she started back to the house, the defendant began swearing and stamping his feet, and said to her, "God damn you, come in here;" that he continued his cursing and swearing for some time; that later, he pulled down the curtains and the awning on the back porch; that he continued swearing after the awnings were pulled down, and said to his mother, "God damn you, get up, or I will kill you;" that his mother was crying and begging him, saying, "Artie, you know I love you,—why do you want to kill me?" that the disturbance and swearing continued intermittently until about 4:30 or 5 o'clock, when Della Harnden called police officers, and they shortly thereafter arrived at the Cooper house; that, when the police officers arrived, they found Mrs. Cooper lying on the floor; that her clothes were on fire; that she had a blanket over her head; that the defendant was

out on the porch when the police officers arrived; that the police officers, with the assistance of a Mr. Lathrop, started to put out the fire on Mrs. Cooper's clothing, and in this they were assisted to some extent by the defendant; that defendant was told that his mother was dying, and he said, "No, she is just letting on;" that defendant was asked at this time how his mother came to be on fire, and he said that she was accustomed to carrying matches, and that she smoked; that, later on, he admitted that she did not smoke.

Several physicians were called, but Mrs. Cooper was unconscious at the time they arrived, and died soon thereafter. A post-mortem examination was held, and the result thereof testified to by the coroner and the doctors who made the post-mortem.

The coroner testified:

"I saw the doctors make the incision in the chest. They found the ribs broken both on the right and left side, and also an incision, or rather, a puncture in the heart,—the heart cavity,—where one of the ribs had been driven into it. Further, there were numerous bruises all over the body from her hips up; part on her neck and various parts of her head; one especially bad behind the ear; and one on her arms and all over her chest and back."

The testimony of the doctors who made the post-mortem examination substantiates the statements of the coroner with reference to the injuries upon the body of the deceased. Dr. K. L. Johnson, in answering the following inquiry, said:

"Q. Which, if any, of the wounds that you observed there were fatal? A. The wounds of the ribs,—the multiple fracture of the ribs. I would speak of it as mashing injury of the chest,—crushing of the ribs,—even though the rupture of the heart would necessarily have been fatal."

Defendant made a written confession, which was received in evidence, reading as follows:

"I, Art Cooper, after being duly sworn, depose and say that I beat my mother, and put both knees on her and crushed her. She was sitting on the chair when I got home, and I got to fussing with her about using the bucket. I was mad, and took hold of her arms and pulled her off the chair and threw her on the floor in the bedroom. She crawled into the front

room, and I ran out of the house, then came back again, and jumped on her chest with my knees, and had hold of her arms with my hands. She said 'quit' or 'don't.' I was not on her with my knees very long, and after I had shaken her and jumped on her with my knees, I got up and went to the table, got matches, and set her clothing on fire. Then I went out on the porch, and laid on the davenport there, and then very soon Eph Allender and Jim Martin came. I heard the automobile come, and got up off the davenport and went into the other room. I make this statement of my own free will and accord, without fear, duress, or promise of leniency or reward, and for the sole purpose of letting the truth be known about the murder of my mother. This statement was read over by me and to me by the county attorney before I signed.''

The defendant interposed as one of his defenses that he was insane at the time that it is claimed that the crime was committed, and that he did not know what he was doing. Defendant introduced expert witnesses to show such claimed insanity. Also, defendant urged as a defense that he was intoxicated at the time of the commission of the crime, if any was committed, and that he was intoxicated to such an extent that he could not entertain a criminal intent; and he introduced numerous witnesses to prove such state of intoxication. In rebuttal, the State introduced expert witnesses, who testified that the defendant was sane, and also introduced witnesses who testified that the defendant was not intoxicated immediately after the tragedy.

The jury returned a verdict a guilty of murder in the first degree, and fixed the punishment at imprisonment in the penitentiary for life at hard labor.

Appellant assigns several errors relied upon for reversal, which may be grouped as follows:

(1) That the indictment did not sufficiently allege the crime of murder in the first degree.

(2) That, under the evidence presented, there was no showing of premeditation, such as to warrant the submission to the jury of the charge of murder in the first degree.

(3) That it was error to admit in evidence the confession made.

(4) That the court erred in excluding certain testimony

of defendant's witness L. L. Phillips, and in admitting the tes-
timony of Cora Moore.

(5)   That the court erred in the giving of certain instruc-
tions.

(6)   That the court erred in the giving and reading to the
jury of additional Instruction No. 1.

(7)   That the judgment should be reversed on account of
misconduct of the county attorney.

II.   Counsel for appellant urge that the indictment does
not charge murder in the first degree, and that overruling the
motion made at the close of all the evidence to withdraw from

1. HOMICIDE: in-     the consideration of the jury the question of
dictment and        murder in the first degree, was error.  It is
information:
first degree.        argued that the indictment fails to charge that
the injuries were inflicted upon the body of Jennie Cooper with
the specific intent to kill and murder her, and that for that
reason the indictment fails to charge murder in the first degree.

The indictment is not vulnerable to the attack made upon
it.   The indictment alleges that the defendant did willfully,
feloniously, deliberately, premeditatedly, and with malice afore-
thought, and with the intent to kill and murder the said Jennie
Cooper, as aforesaid, feloniously strike, jump upon, stamp, kick,
and kneel upon the said Jennie Cooper, upon her breast, chest,
sides, head, neck, and shoulders, and did thus feloniously, will-
fully, deliberately, premeditatedly, and with malice afore-
thought strike the said Jennie Cooper with his fists, and stamp,
jump upon, kneel upon, and kick the said Jennie Cooper with
his feet and knees and fists, and did then and there, in the
manner aforesaid, inflict mortal wounds as aforesaid, of which
mortal wounds so inflicted, said Jennie Cooper died.

The indictment sufficiently charged the crime of murder
in the first degree, under our holdings.  *State v. Shelton,* 64
Iowa 333; *State v. Phillips,* 118 Iowa 660; *State v. Wilson,* 166
Iowa 309.

III.   Appellant claims error in overruling his motion to
direct a verdict, and in refusing to sustain his motion for a new
trial on the grounds:

(1)   That the State failed to show that decedent, Jennie
Cooper, came to her death by unlawful means.

(2)    That the verdict is against the weight of the evidence.

(3)    That the State failed to show premeditation.

These claims require an examination of the evidence.    We deem it not necessary to set forth the testimony in detail.    Appreciating the gravity of the charge, we have examined the record with care, and have hereinbefore set forth the substance of it.    We think the evidence sufficient to warrant the jury in finding that defendant murdered his mother; that defendant accomplished the murder by hitting her with his fists, kicking her, jumping on her until he crushed almost the last spark of life out of her; and that he then set fire to her clothing, in order to cover up the horrors of his acts.

2. HOMICIDE: murder: premeditation.

There is nothing in the record that tends in the least to afford excuse or justification for the terrible crime committed, except the theory of the defense that the defendant was suffering from a form of alcoholic insanity, and was intoxicated at the time, which defenses we will later discuss.

Counsel insist that no premeditation was shown, such as would warrant the submission to the jury of the question of murder in the first degree. This contention is not borne out by the record. The record shows that defendant had made threats to kill his mother; that he made such threats the day before the tragedy; that, before the tragedy, on the day of the tragedy, about noon, he started quarreling with his mother, using the most abusive language towards her, which continued up until nearly 5 o'clock; that neighbors heard him cursing and swearing at his mother and threatening to kill her. There is ample evidence in the record on which to find premeditation and deliberation. The record fully justified submitting to the jury the charge of murder in the first degree.

IV.    Appellant urges that it was error to admit in evidence the written confession made by defendant, for the reason that it was not shown that said confession was a voluntary confession, but that the confession was obtained from defendant by reason of fear; and for the further reason that defendant kept insisting that he knew nothing about the commission of the crime. We have examined the record carefully, with respect to the confession. There was no showing made sufficient to

warrant the rejection of the confession, and without doubt the confession was properly admitted. The jury was carefully and correctly instructed by the court with reference to the consideration to be given the confession.

V. Appellant complains that an answer to a question propounded to L. L. Phillips, witness for defendant, was stricken on motion of the State. Phillips testified that he was in the Cooper home on the day in question, and saw defendant lying on a cot on the porch, about 1 o'clock in the afternoon, and, over the objection of counsel for the State, was first permitted to testify to a statement made by the mother of defendant, by answering: "She said, 'Don't wake him; he is drunk.'" It then appeared that defendant was asleep, and counsel for the State moved to strike the answer of Phillips as to what Mrs. Cooper said. The witness having answered that defendant was asleep, the motion was sustained. The stricken answer was purely hearsay, and not *res gestae*, and there was no error in excluding the answer of the witness, Phillips. The statement of Mrs. Cooper was not *res gestae*, as it in no way states how or by what means she was injured. In fact, injury to Mrs. Cooper took place at a later time. It was not error to exclude such statement by the witness. 1 Wharton on Criminal Evidence (10th Ed.) 501.

3. EVIDENCE: *res gestae*: hearsay matter.

Also, counsel for appellant urge that the court erred in permitting Cora Moore, witness for appellant, to testify on cross-examination, over their objection, that defendant had been sentenced for robbery, and that J. G. Patterson, of counsel for appellant, was county attorney at the time. The contention is without merit. When a witness in his own behalf, defendant testified to the same effect.

VI. It is urged that the court erred in giving Instruction 9, in that he confined the jury to the question of murder in the first degree, or manslaughter, and failed to instruct with reference to murder in the second degree. The complaint is that this Instruction 9 did not define murder in the second degree, and thus led the jury to believe that the only question in the case would be as to murder in the first degree or manslaughter. This contention is without merit. In other instructions, the court adequately instructed the jury in regard to second-degree mur-

der, and submitted that question to the jury, along with first-degree murder and manslaughter.

Appellant complains of that part of Instruction 26 where the court instructed the jury, in substance and effect, that the law presumes that the defendant was sane, and that, where the defense of insanity is interposed, as in the instant case, it was incumbent upon the defendant, unless the same appears from the facts attendant upon the acts or circumstances surrounding the transaction, to establish insanity by a preponderance of the evidence, and to overcome the legal presumption of sanity and any evidence tending to show that the defendant was sane at that time. Counsel for appellant urge that such instruction places too much of a burden upon the defendant, because it not only requires defendant to overcome the presumption of insanity, but to overcome the evidence offered by the State to show that defendant was sane at the time; and that it was not the proper instruction to give in this case, because the appellant did not claim that he was driven to commit the alleged offense by an insane impulse, but claimed that he did not know; did not know anything; did not know that he even committed a crime, if he did commit it. We think that the instruction given is not open to the criticism made upon it.

4. CRIMINAL LAW: capacity to commit crime: presumption as to sanity.

Complaint is made of Instruction 27 on the ground that, as claimed by appellant, the instruction practically tells the jury that the defendant, in setting up the defense of insanity, set up practically an unheard-of defense. The instruction is not vulnerable to such attack. The usual instruction on that question was given, and no additional instruction was requested. The court especially instructed the jury that it should indulge in no prejudice against the defense of insanity, but should give it thoughtful and dispassionate consideration.

It is urged that the court erred in submitting Instruction 28 to the jury, for the reason that such instruction defines two different forms of insanity, and instructs the jury that it must find that the defendant was driven to the commission of the offense by an insane impulse. There is no merit in this contention. Defendant set up the defense of general insanity, and

also the defense of alcoholic insanity, and the court adequately and correctly instructed on both phases of claimed insanity.

VII.   It is urged that the court erred in giving an additional instruction.   The record discloses that, after the jury had been out about 24 hours, it came into court, and was asked whether a verdict had been agreed upon, and was asked how they stood.   The court was advised that the jury stood 9 to 3, and at this time the following communication was handed to the court:

5. CRIMINAL LAW: trial: instructions: "jury recommendations."

"Judge Wagner: Would it be legal for us to find the defendant guilty of murder in the first degree and to be punished by imprisonment in the penitentiary for life at hard labor, with the recommendation that he be never pardoned or paroled? W. A. Caldwell, Foreman."

· The court then gave the additional instruction complained of, which read:

"With reference to the question submitted to the court, and which is signed by your foreman, will say that, when you have agreed, you will have the form of verdict agreed upon signed by your foreman, and return the same, together with these instructions and exhibits, into court.   Should you desire to make any recommendation, you may write the same out on a separate sheet of paper, and have the same signed by your foreman, or by any or all of the members of the jury, and return the same, together with your verdict and exhibits and instructions, into court.

"H. F. Wagner, Judge."

At the time of coming into court with the verdict, the jury presented to the court a recommendation, signed by members of the jury, as follows:

"It is the desire and wish of the jury in the above case that the defendant, Arthur Cooper, be never pardoned or paroled, and that he be required to spend the balance of his life at hard labor in the penitentiary."

The jury returned its verdict in about two and one-half hours after the additional instruction was given.   Counsel urge that the jury was influenced to return a verdict of guilty by the additional instruction, and also that the recommendation of the

jury shows passion and prejudice.  Counsel insist that our hold-
ing in *State v. Kernan*, 154 Iowa 672, supports their contention.
We think it does not.  In the *Kernan* case, the court told the
jury that any recommendation it might make would be consid-
ered.  In the instant case, the court made no such promise, but
merely told the jurors that, if they desired to make any recom-
mendation, they might do so.  The court gave no indication as
to whether or not the jury's recommendation, if they made any,
would receive consideration.  The rule announced in the *Kernan*
case is based on the thought that, where the statement of the
court with reference to the consideration to be given a recom-
mendation is such that the jury might be influenced thereby, it
is erroneous.  The record in the case before us negatives the
thought that the trial court said or did anything in connection
with such recommendation that could be said to have influenced
the jury in any way as to the verdict which should be returned.

VIII.  Counsel complain of misconduct on the part of the
county attorney in argument to the jury, and urge that it was
error to refuse to grant a new trial on that account.

6. CRIMINAL LAW:
new trial: mis-
conduct in
argument.

The arguments of counsel are not set forth
in the record, but only a few remarks from the
argument of the county attorney are produced.
We find nothing in the few phrases of the argument of the
county attorney presented that we think would be prejudicial
to the defendant.  In the absence of everything said in the argu-
ment of counsel on both sides except the few phrases of the
county attorney's argument, the presumption may be indulged
that the argument made by the county attorney was a legitimate
response to something said by counsel for defendant.  *State v.
Cameron*, 177 Iowa 379; *State v. Crayton*, 138 Iowa 502; *State
v. Hart*, 140 Iowa 456.

IX.  Appellant was represented by able counsel, and his
case was skillfully tried.  The claim made by defendant that
he was insane at the time, and that he was under the influence

7. CRIMINAL LAW:
responsibility
for crime:
insanity.

of intoxicants to such an extent, at the time,
that he was unable to entertain a criminal in-
tent, formed the issues on which the main battle
was fought.  There can be no question, under the record, that
appellant, Arthur Cooper, crushed the life out of his mother,

Jennie Cooper. Jennie Cooper was struck, kicked, and stamped to death, and defendant was the only person, other than Jennie Cooper, present when the acts were committed. In fact, there is but weak contention that appellant did not commit the acts of which he was charged. Added to this, is the written confession of defendant that he committed the acts charged. The serious question in the case is whether the commission of the crime was the result of insanity and intoxication, or was in pursuance of a criminal intent. These are highly important and very serious questions in this case. The record discloses decided conflict in the evidence as to whether the defendant was sane or insane, sober or intoxicated. Especially is this conflict pronounced in the testimony of the expert witnesses. Both the defense and the State introduced testimony of a number of doctors on the issue of insanity. The testimony of appellant's witnesses and of the State's witnesses on this question was irreconcilable and in direct opposition. The record discloses no provocation for the horrible deed. Appellant's cursing his mother and threatening to kill her, and a little later crushing the life out of her, without any provocation, would not seem to be acts of a normal man. Undoubtedly, they were not entirely normal acts; but it does not necessarily follow that, if the defendant was insane at the time he assaulted Jennie Cooper, said assault was the result of such insanity. Broadly speaking, the insanity which absolves one from responsibility for acts which would otherwise be criminal must be of a character which causes the act and irresistibly compels it. There is no testimony in the record that appellant had previously been guilty of any acts of cruelty toward his mother; but, on the other hand, the record is that he had been kind to her. Appellant had led a reckless life with respect to drinking, and had been confined in the reformatory at Anamosa for robbery. Appellant had drunk liquor from the time he was 15 years old, and during later years was addicted to excessive use of intoxicating liquor. He had been committed two or three times to the inebriate hospital at Knoxville. He had been seized with delirium tremens several times. At the time of the tragedy, he had a quantity of home brew in the house, and, according to his testimony, had been drinking it freely in the forenoon of the day of the tragedy

and the day before, and had also drunk a considerable quantity of lemon extract and Jamaica ginger. Appellant's testimony was that he was under the influence of liquor at the time of the tragedy, and that he did not know,—had no memory of what happened. The record discloses, by the testimony of several witnesses, and by that of appellant himself, that, when the neighbors and police officers arrived at the house, when Jennie Cooper was dying from the wounds inflicted upon her, appellant helped to move the victim from the floor to an easier resting place, and asked for a doctor for his mother, and telephoned to his sister; and the persons present at that time testified that, in their opinion, he was sane and sober.

The defenses of insanity and intoxication were skillfully presented to the court and jury. The trial court correctly and very completely instructed the jury upon these issues. The seriousness of the case has urged us to examine the record with great care. There was no lack of evidence to support the commission of the crime. It was for the jury to determine whether or not defendant should be excused for his acts on account of the defenses made. We find no prejudicial error in the record. We think that appellant had a fair and impartial trial. He was given the full benefit of every feature of his defenses. We find no reason for disturbing the verdict of the jury. The case is— *Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.