THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO ROSARIO CENTENO, Defendant and Appellant.

No. CR-63-328.　Decided September 30, 1964.

---

*Ángel Viera Martínez* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Irene Curbelo, Assistant Solicitor General,* for The People.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The jury which sat in the prosecution against appellant Antonio Rosario Centeno, entered a majority verdict of "guilty of assault with intent to commit murder." After the case had been submitted and during the deliberations, an incident took place in relation to a recommendation for clemency, which it is necessary to copy.

"FOREMAN OF THE JURY.

   (Paul Aguirre Cault)

Your Honor, we would like to confer with Your Honor, if possible, because we have a doubt.

854

JUDGE:

To orient you: You cannot state the divergence in criterion, but the legal question which the Gentlemen of the Jury wish the court to explain. You cannot state what the deliberations have been or the questions of fact in disagreement, because the deliberations of the Gentlemen of the Jury are secret. Moreover, this judge feels displeased when in the aisles, corridors, and streets some jurors comment on the discussions in the jury room. That should remain in secret.

FOREMAN OF THE JURY:

We have no divergencies, Your Honor, we only have a doubt as to one point.

JUDGE:

What is the legal question over which you have a doubt?

FOREMAN OF THE JURY:

There is no doubt as to any legal issue. It is . . . Gosh! . . . I find no way or I don't know how to say it correctly in Spanish.

JUDGE:

You can say it in English.

FOREMAN OF THE JURY:

What I try to say or to ask is, whether if we can give a verdict under a special condition.

JUDGE:

What do you mean by "special condition?"

FOREMAN OF THE JURY:

If we can recommend clemence [sic].

JUDGE:

That is a recommendation that the jury may make to the trial court, that the court is not bound to follow; but the judge generally adopts said recommendations for clemency. That does not mean, Mr. Foreman, that they have already decided as to the question in the case, but a possibility?

FOREMAN OF THE JURY:

A possibility.

JUDGE:

Yes. The court may consider a recommendation for clemency made by the jury. It may consider it and, as a matter of fact, it is considered, and as a matter of fact, this judge considers it,

and as a matter of fact all judges consider it, although they are not bound by law to consider it." (Tr. Ev. 2–5.)

The jury retired again to deliberate. About ten minutes later it returned to court announcing that they had reached an agreement. The judge inquired whether the same was the decision of tén of the members, the foreman answered in the affirmative and added: "We recommend clemency for the accused." Immediately afterwards the judge stated that he would take into consideration the recommendation and asked:

"Mr. Foreman, is this verdict the result of any transaction between you, any agreement between you, or, excuse the phrase I am going to use, any compromise between you, or is it the well-reasoned opinion, the genuine, the real, honest and honorable opinion of ten of you?"

The foreman of the jury answered:

"I think it is the honest opinion of ten of us."

Four of the fourteen errors assigned in the present appeal refer to the incident briefly described: 1) indicating to the jury, prior to returning the verdict, that the trial court would consider a recommendation for clemency; 2) that the verdict is void because it was conditioned to the fact that a recommendation for clemency would be considered, and it does not constitute the free opinion of the majority of the jury; 3) in refusing to dissolve the jury after the incident; and, 4) in polling the jury in relation to the verdict.

1—Although it may seem a platitude, we shall begin by saying that the verdict should be the true expression of the opinion on the part of the jurors, adopted by majority, free of coercion or extraneous influences, devoid of errors or surprise. *People* v. *Cruz*, 49 P.R.R. 637 (1936); *People* v. *Lebrón*, 47 P.R.R. 408 (1934).[1] When the verdict is clear

---

[1] That is why subdivision 4 of § 303 of the Code of Criminal Procedure, 34 L.P.R.A. § 883, as well as the one in force, Rule 188b of the

and its wording leaves no doubt as to the intention of the jury, *People* v. *Martínez Díaz, ante,* p. 456; *People* v. *Velázquez,* 69 P.R.R. 316 (1948); *People* v. *Piazza,* 60 P.R.R. 561 (1942); any additional expression as to the existence of mitigating circumstances, *The People* v. *Valcourt,* 16 P.R.R. 692, 695 (1910), or with a recommendation of clemency, *The People* v. *Díaz, alias Leña Verde,* 12 P.R.R. 141 (1907), cannot be considered as part of the verdict. The judge may consider, *People* v. *Ruiz,* 60 P.R.R. 604 (1942), or disregard, *The People* v. *Montijo,* 8 P.R.R. 1 (1905), said recommendations. See 48 Cal. Jur.2d, *Trial,* § 526.

In *State* v. *Meany,* 115 N.W.2d 247, 258 (Minn. 1962), it is stated that the jury should be advised, upon an inquiry as to whether the court will consider a recommendation for leniency, that the matter of fixing punishment rests entirely with the court, and that the sole function of the jury is to determine the guilt or innocence of defendant. See, also, *United States* v. *Louie Gim Hall,* 245 F.2d 338 (2d Cir. 1957) and cases therein cited, especially, *People* v. *Warner,* 286 N.W. 811 (Mich. 1939) and *State* v. *Kernam,* 135 N.W. 362 (Iowa 1912).[2]

Taking as a whole all the expressions during the incidents it appears that the court correctly explained to the jury that the judge may consider a recommendation for clemency, although he was not bound to adopt it. He never stated that he was bound, and therefore it cannot be stated that the jury acted influenced or motivated by the firm conviction that its recommendation would unfailingly be adopted. After indicating the possibility of adopting the

---

Rules of Criminal Procedure of 1963, admit as one of the grounds for the new trial "when the verdict has been decided by lot, or by means other than a fair expression of opinion on the part of all the jurors."

[2] As to the availability of an instruction on the eligibility of defendant for probation at the proper time, see *Ringo* v. *Commonwealth,* 346 S.W.2d 21 (Ky. 1961) and *Davis* v. *State,* 328 S.W.2d 765 (Texas 1959), *cert. denied,* 80 S.Ct. 87.

recommendation the judge was exceedingly careful in instructing the members of the jury, clearly and precisely, on their obligation to return a verdict based on the weighing and consideration of the evidence. That the statements of the judge could not influence the jury in finding defendant guilty of the offense charged, on condition that clemency will be practiced is shown by the verdict itself, which contains no reference as to the recommendation, and the fact that the foreman of the jury expressly stated "We have no divergences." Even more. After returning the verdict the judge asked again whether the same was the result of a transaction or agreement, to which the answer was negative. We have no doubt that the jury perfectly understood that its mission was to find defendant guilty or innocent irrespective of the clemency which the judge might exercise when imposing the penalty.[3]

*McBean* v. *State*, 53 N.W. 497 (Wis. 1892), cited by appellant, is clearly distinguishable because according to the facts therein related, the jury expressly sent the bailiff to inquire from the judge "if we bring in a verdict of guilty can we depend on the clemency of the court?" These are not the concurring circumstances in the case at bar.

■■ The assignment that the trial court polled the jury —prohibited by Act No. 7 of December 29, 1950 (Sess. Laws, p. 386), which had repealed § 290 of the Code of Criminal Procedure—merely because the members of the jury were asked, as a whole, whether the verdict returned was the genuine, well-founded, and fair opinion, lacks merits. *Cf.* Rule 151 of the Rules of Criminal Procedure of 1963, *Jaca* v. *Delgado, Warden*, 82 P.R.R. 389 (1961).

2—The most favorable version to defendant of the facts which gave rise to his conviction established that the preju-

---

[3] Section 320 of the Code of Criminal Procedure, 34 L.P.R.A. § 962; Rule 171 of Criminal Procedure of 1963.

diced party, while drunk, entered by mistake into appellant's yard, staggering and knocking at the windows and doors. Being very tired, he fell asleep leaning against the wall of the house. The inhabitants were frightened and the head of the family, an old man—he was 70 years old—left his bed and communicated to the trespasser his intention to defend himself. He armed himself with a revolver. His warnings of halt—"Who is around?" "I am going to look for a revolver" —received no answer. Defendant fired several times in the direction of the place where the trespasser was. Unfortunately one of the bullets went across the trespasser's spinal column and the tragic result is an invalid doomed to a wheelchair.

Appellant complains that the trial court did not give instructions as to the offense of assault to commit manslaughter and aggravated assault and battery and limited itself to give instructions as to assault to commit murder. Irrespective of the fact that no objection was timely presented, although the court invited the parties to state whether they were interested in any special instruction, the facts related do not justify the contentions raised now for the first time on appeal.

In the crime of attempt to kill, malice aforethought must concur—which element is not necessary in assault to commit manslaughter, *People* v. *Saltari*, 53 P.R.R. 850, 865–66 (1938)—and the intent to kill—which is not necessary in assault and battery, *People* v. *District Court*, and *Colón, Int.*, 74 P.R.R. 783–799 (1953). The concept of malice aforethought implies the absence of just cause or excuse in causing the death and the existence of the intent to kill a fellow creature. As we said in *People* v. *Méndez*, 74 P.R.R. 853, 860 (1953), "That intent may be manifested through one of the two following elements, either of which is sufficient to determine the existence of malice afore-

thought, to wit, (*a*) the specific intent to kill, considered as equivalent to the desire and direct, explicit and defined purpose to kill, that is, formulated precisely with the direct objective to kill, [citation] or, (*b*) the intention to do an act or inflict great bodily injury whose probable consequence is the death of a person," without it being indispensable to show the deliberate intent to kill any human being in particular, because it suffices to create a situation of imminent danger of death, *People* v. *Cruz*, 49 P.R.R. 637, 641–642 (1936).

■.■ On the other hand, the verdict returned shows that the jury understood that defendant did not have a well-founded cause to believe that he was in imminent danger of his life or of receiving great bodily harm, or that his action was the result of a lawful defense of his home. *Cf.* *People* v. *Túa*, 84 P.R.R. 37, 59–65 (1961). The circumstances were properly analyzed by the representative of the Solicitor General as follows: "It is evident that the jury decided that defendant's fear was exaggerated and not well-founded, not because the person involved was a drunkard, who did not have the harmful intention, but because of the concurring circumstances in the case. In the first place, defendant had the benefit of safety, being shut up in his house; the trespasser was never in the presence of defendant and, therefore, the latter never saw any move, provocation or gesture to inspire reasonable fear that he was in immediate danger of his life, his property or the life of his family. Noises by themselves do not inspire such fear in a man of moderate courage. In the second place, after defendant stated aloud his intention to defend himself with a firearm, the resulting silence advised the necessity of exercising further precaution before firing, that of at least, turning on the lights in the house. Mere noises in the surroundings of the residence do not justify firing a deadly weapon totally

disregarding the consequences." See *People* v. *Torres*, 52 P.R.R. 484, 492 (1938).

The errors assigned lack merit, and if committed, they were harmless.[4]

The judgment rendered by the Superior Court, San Juan Part, on March 16, 1962 will be affirmed.[5]

---

[4] Said errors are the following: 1—the refusal to order the delivery of the sworn statement offered by the prejudiced party, as no substantial prejudice was shown. *People* v. *Villegas* (judgment rendered September 30, 1963) ; 2—the illegal intervention in the examination of a witness; 3—the admission of certain evidence in the rebuttal; 4—in permitting the jury to take the medical certificate of the injuries received by the prejudiced party, which had been presented by stipulation of the parties to the jury's room; 5—the admission of the injured party's testimony because he was drunk when the facts occurred; 6—the repeatedly adduced error that the verdict is contrary to law and to the evidence; 7—in denying the motion for a new trial.

[5] The court imposed on appellant an indeterminate sentence of two to three years in the penitentiary, but suspended its execution of the judgment pursuant to the provisions of Act No. 259 of April 3, 1946, 34 L.P.R.A. § 1027. As appellant did not post bail on appeal, he started to serve sentence, which he extinguished on July 4, 1964. *People* v. *Vélez*, 76 P.R.R. 135 (1954).